IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PRATUL M. PATEL, M.D., AND | § | |
| PRATUL M. PATEL, M.D., P.A., | § | |
| | § | CIVIL ACTION NO. 3-08-CV-0249-M |
| PLAINTIFFS, | § | |
| | § | JURY TRIAL DEMANDED |
| VS. | § | |
| | § | |
| PACIFIC LIFE INSURANCE COMPANY, | § | |
| ECONOMIC CONCEPTS, INC., | § | |
| ECI PENSION SERVICES, LLC, AND | § | |
| KENNETH R. HARTSTEIN, | § | |
| | § | |
| DEFENDANTS. | § | |

---

**BRIEF IN SUPPORT OF SUPPLEMENTAL RESPONSE TO RECENTLY
CONVERTED MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE
RULE 56(f) MOTION FOR CONTINUANCE TO CONDUCT DISCOVERY**

---

Eric D. Madden
State Bar No. 24013079
Brandon V. Lewis
State Bar No. 24060165
DIAMOND MCCARTHY LLP
1201 Elm Street, Suite 3400
Dallas, Texas 75270
(214) 389-5300 (telephone)
(214) 389-5399 (facsimile)

Gary Cruciani
State Bar No. 05177300
Michael P. Fritz
State Bar No. 24036599
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000 (telephone)
(214) 978-4044 (facsimile)

## TABLE OF CONTENTS

Page No.

I.    INTRODUCTION.................................................................................1

II.   FACTUAL BACKGROUND ...............................................................2

III.  LEGAL STANDARDS. ........................................................................5

IV.   ARGUMENT AND AUTHORITIES.................................................7

    A.   GENUINE ISSUES OF MATERIAL FACT
          EXIST AS TO WHETHER THE WAIVER-OF-RELIANCE
          PROVISIONS ARE BINDING ON PATEL. ..................................7

          1.   Courts Apply a Five-Factor Test to Examine the
                Totality of the Circumstances in Evaluating
                Waiver-of-Reliance Provisions ...........................................8

          2.   Each of the Applicable Factors Weighs Against
                Summary Judgment...........................................................9

                a.   The Contract Terms Were Boilerplate and Not
                    Negotiated .................................................................9

                b.   Patel Did Not Have Counsel Present...........................10

                c.   The Contract Was Not the Result of an
                    Arm's-Length Transaction ........................................11

                d.   Patel Lacked Business Sophistication in This
                    Specialized Matter ...................................................12

                e.   The Contract Language Was Unseen and
                    Unexplained ............................................................12

    B.   ALTERNATIVELY, LIMITED DISCOVERY IS NECESSARY
          TO PROVIDE ADDITIONAL EVIDENCE TO REBUT
          PACIFIC LIFE'S MOTION ......................................................13

V.    CONCLUSION ..................................................................................17

# TABLE OF AUTHORITIES

**Page No.**

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 6

*Beattie v. Madison County Sch. Dist.*, 254 F.3d 595 (5th Cir. 2001) ................................7

*Bridgmon v. Array Sys. Corp.*, 325 F.3d 572 (5th Cir. 2003) ...........................................6

*Chaplin v. NationsCredit Corp.*, 307 f.3d 368 (5th Cir. 2002)..........................................6

*Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138 (5th Cir. 1993).........................7

*Culwell v. City of Fort Worth*, 468 F.3d 868 (5th Cir. 2006) .............................................6

*Envtl. Def. Fund v. Marsh*, 651 F.2d 983 (5th Cir. 1981).................................................5

*Forest Oil Corp. v. McAllen*, 268 S.W.3d 51 (Tex. 2008).......................................*passim*

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir. 1991)...................................7

*Latimer v. Smithkline & French Labs.*, 919 F.2d 301 (5th Cir. 1990)................................5

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) ................................................5, 6

*Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997) .....................*passim*

*Thomas v. N.A. Chase Manhattan Bank*, 1 F.3d 320 (5th Cir. 1993)................................8

*Wichita Falls Office Assocs. v. Bank One Corp.*, 978 F.2d 915 (5th Cir. 1992) ...........6, 17

*Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345 (5th Cir. 1989).......................................7

## RULES

FED. R. CIV. P. 56 ...................................................................................................*passim*

**TO THE HONORABLE JANE J. BOYLE, UNITED STATES DISTRICT JUDGE:**

Plaintiffs Pratul M. Patel, M.D., and Pratul M. Patel, M.D., P.A. (collectively, "Patel") respectfully submit this Brief in Support of the Supplemental Response to Recently Converted Motion for Summary Judgment and Alternative Rule 56(f) Motion for Continuance to Conduct Discovery.[1]

## I. INTRODUCTION

The issue is simple — the few documents submitted by Pacific Life do not entitle it to judgment as a matter of law. Patel justifiably relied on the misrepresentations and omissions that Pacific Life (and its agents, like Franck Cushner) made to induce him to establish the 412(i) plan at the heart of this lawsuit.[2] Pacific Life argues that the documents it improperly attached to its Motion to Dismiss contain waiver-of-reliance provisions that bar Patel's claims. This argument does not pass muster. Patel *did not sign the documents* containing these waiver-of-reliance provisions and did not otherwise assent to their terms.[3] Additionally, to test waiver-of-reliance provisions, courts must examine the totality of the circumstances, which Pacific Life has ignored, and apply a five-factor test, which Pacific Life has not attempted. Pacific Life's reluctance is easily understood. Examining those circumstances and applying that test to Patel's sworn statement[4] casts a spotlight on the sea of fact issues the Court must resolve before dismissing Patel's justifiable reliance. Hence, summary judgment is improper.

---

[1] Pursuant to Local Rule 56.6(a), Patel has contemporaneously filed an Appendix in Support of the Supplemental Response to Recently Converted Motion for Summary Judgment and Alternative Rule 56(f) Motion for Continuance to Conduct Discovery ("App.").

[2] This brief assumes that the Court converted Pacific Life's motion to dismiss into a motion for summary judgment under Rule 12(d) to evaluate Patel's justifiable reliance. If, however, that assumption is incorrect, Patel still moves for a continuance under Rule 56(f), but reserves the right to alter the categories of requested discovery.

[3] Exhibit B to Pacific Life's Motion to Dismiss contains no signature, and Patel disputes the authenticity of Exhibit C thereto.

[4] App. at 1-5.

Alternatively, if the Court determines that Patel has not raised the necessary fact issues, Patel requests a brief continuance under Rule 56(f) to acquire additional summary judgment evidence, which, until now, he has been unable to obtain because discovery has not commenced. Regardless of the Court's position on Patel's declaration, it still must examine the totality of the circumstances surrounding the creation and execution of the alleged waivers-of-reliance. With this Rule 56(f) motion, Patel merely requests the opportunity to further enlighten the Court as to those circumstances. So whether the Court determines that Patel's declaration raises fact issues precluding summary judgment or that Pacific Life has failed to fully present evidence of the totality of the surrounding circumstances, the Court is in no position to rule as a matter of law that Patel did not, in fact, justifiably rely on Pacific Life's false representations.

## II. FACTUAL BACKGROUND

Patel and Cushner have been good friends since about 1997.[5]  When Cushner joined Merrill Lynch in or about 2000 or 2001, Patel transferred his entire brokerage portfolio from one Merrill Lynch advisor over to Cushner's direction.[6]  With this transfer, Cushner became Patel's sole financial advisor.[7]

In 2002, Patel was looking for a risk-free investment to provide a vehicle for retirement savings.[8]  After receiving an unsolicited mailing that same year describing 412(i) plans, Patel contacted Cushner and asked him whether a 412(i) plan was the risk-free investment that Patel was looking for and whether such a plan would be right for Patel.[9]  Cushner told Patel that he

---

[5] *See* App. at 2-3.

[6] *See id.*

[7] *See id.*

[8] *See id.*

[9] *See id.* at 3.

would research 412(i) plans and report back.[10]  Cushner not only researched section 412(i), but he left his job at Merrill Lynch so he could become an agent for Pacific Life and sell a high premium insurance policy to Patel.  It was in this capacity, as an agent for Pacific Life, that Cushner induced Patel to establish a 412(i) plan and purchase an expensive, high premium, Pacific Life insurance policy.

Shortly thereafter, Cushner told Patel that the best strategy for Patel's needs would be to set up a 412(i) plan and fund it with an insurance policy from Pacific Life.[11]  According to Cushner, this investment was risk-free, completely legitimate, and would provide a safe vehicle for retirement savings.[12]  Additionally, Cushner told Patel that the premiums paid on the Pacific Life policy funding the 412(i) plan were tax deductible.[13]  Based solely on these and other representations from Cushner, Patel decided to set up a 412(i) plan and fund it with an insurance policy issued by Pacific Life.[14]

In February 2003, Cushner traveled to Dallas, Texas, in order to set up the 412(i) plan and sell the Pacific Life policy to Patel.[15]  In a meeting that lasted no more than half-an-hour, Patel signed the documents that Cushner presented to him.[16]  Immediately thereafter, Patel and Cushner made copies of the entire set of those documents for Patel to keep in his files.[17]  Cushner then returned to his New York office with the originals.[18]

---

[10] *See id.*

[11] *See id.*

[12] *See id.*

[13] *See id.* at 3-4.

[14] *See id.* at 4.

[15] *See id.* at 4-5.

[16] *See id.* at 5.

[17] *See id.*

[18] *See id.*

At no point during this entire process did Cushner ever disclose to Patel that there were risks associated with this type of investment activity, the potentially abusive nature of the program, or the risk that the IRS might refuse to recognize the purported tax benefits of this kind of program.[19]  Likewise, at no point during this entire process did Cushner ever tell Patel that he could not rely on Cushner's representations or that he had to waive any legal rights in order to establish the Patel DBP and fund it with a Pacific Life insurance policy.[20]

On February 12, 2008, Patel filed this lawsuit against Pacific Life and others.  Pacific Life filed a motion to dismiss and attached, as Exhibit B, a document that contains no signature whatsoever and, as Exhibit C, a document that allegedly contains Patel's signature.[21]  Pacific Life claims Exhibits B and C demonstrate that Patel waived any right he had to rely on the representations Cushner and Pacific Life made to induce him to establish the Patel DBP and fund it with a Pacific Life insurance policy.

With respect to Exhibit B, the document contains no signature which necessarily begs the question of whether it was even showed to Patel, much less reviewed and ratified by him.  The fact that Pacific Life would attempt to use and unsigned unauthenticated document to prove that Patel waived any right to seek redress from Pacific Life in this suit underscores the weakness of their position and proves, by itself, that summary judgment is improper.

As for Exhibit C, Patel never saw that document before Pacific Life attached it to the motion to dismiss.[22]  Although superficially the signature on Exhibit C appears to resemble Patel's signature, it is, in fact, not his.[23]  And Patel never gave anyone permission to sign his

---

[19] *See id.* at 4.

[20] *See id.* at 5.

[21] *See* Pacific Life's Motion to Dismiss Ex. B and C.

[22] *See* App. at 5.

[23] *See id.*

4

name to Exhibit C.[24]  Exhibit C is not among the documents copied following the Dallas meeting between Patel and Cushner in February 2003, and all documents reviewed and signed at that meeting were copied and given to Patel.[25]

On December 17, 2008, the Court converted the Rule 12(b) motion filed by Pacific Life into a Rule 56 motion.  The Court also authorized Patel to file any narrowly tailored Rule 56(f) motions and present any additional evidence pertinent to the summary judgment motion by January 12, 2009.  That order prompted this brief.

### III. LEGAL STANDARDS

Summary judgment should be granted only in those limited instances where the movant proves that "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[26]  The Fifth Circuit describes this as an "exacting standard," falling squarely and exclusively on the movant's shoulders.[27]  Indeed, if the movant fails to satisfy this high burden, the Court has no choice but to deny the motion, regardless of the nonmovant's response.[28]

It is only when a movant manages to satisfy this exacting standard that the Court must consider the nonmovant's response and evidence.  In contrast to the movant's high burden, the nonmovant need only demonstrate a genuine issue for trial.[29]  What is more, the Court must view all of the evidence—and draw all justifiable inferences—in the light most favorable to the

---

[24] *See id.*

[25] *See id.* at 4-5.

[26] FED. R. CIV. P. 56(c).

[27] *See Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990); *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

[28] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[29] *See* FED. R. CIV. P. 56(e)(2).

nonmovant.[30]  The Court also must resolve any and all factual ambiguities or controversies in the nonmovant's favor.[31]  Summary judgment is appropriate only "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[32]  So if the record presents any material fact issues, the Court cannot and should not render summary judgment.[33]

In addition to the stringent standards of Rule 56(c), the nonmovant may invoke the procedural safeguards of Rule 56(f) to seek a continuance of the summary judgment proceedings. The rule provides, in pertinent part, as follows:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1)    deny the motion;
> (2)    order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> (3)    issue any other just order.[34]

Continuances under Rule 56(f) are "broadly favored and should be liberally granted."[35]  Rule 56(f) provides nonmovants "with a much needed tool to keep open the doors of discovery in order to adequately combat a summary judgment motion."[36]  In fact, the Fifth Circuit has noted that "[s]ummary judgment should not . . . ordinarily be granted before discovery has been

---

[30] *See, e.g., Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 576 (5th Cir. 2003); *Chaplin v. NationsCredit Corp.,* 307 F.3d 368, 371-72 (5th Cir. 2002).

[31] *Little,* 37 F.3d at 1075.

[32] *Little,* 37 F.3d at 1075 (quoting *Armstrong v. City of Dallas,* 997 F.2d 62 (5th Cir. 1993)).

[33] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

[34] FED. R. CIV. P. 56(f).

[35] *Culwell v. City of Fort Worth,* 468 F.3d 868, 871 (5th Cir. 2006).

[36] *See Wichita Falls Office Assocs. v. Banc One Corp.,* 978 F.2d 915, 919 (5th Cir. 1992).

completed.[37]  Not surprisingly then, the Fifth Circuit has stated that Rule 56(f) motions "should be granted almost as a matter of course."[38]

To obtain a Rule 56(f) continuance, a nonmovant must satisfy four specific requirements: (1) request extended discovery prior to the Court's ruling on summary judgment; (2) put the Court on notice that further discovery pertaining to the summary judgment motion is being sought; (3) demonstrate to the Court how the requested discovery pertains to the pending motion; and (4) diligently pursue relevant discovery.[39]  Upon such a showing, the Court may order a continuance to allow the requested discovery or simply deny the summary judgment motion.[40]

## IV.  ARGUMENT AND AUTHORITIES

### A.  GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER THE WAIVER-OF-RELIANCE PROVISIONS ARE BINDING ON PATEL.

Pacific Life is not entitled to summary judgment.  There are genuine issues of material fact concerning whether Patel justifiably relied on its misrepresentations and omissions.  Pacific Life would have this Court believe that the documents in its Appendix, as a matter of law, bar Patel's ability to prove that he justifiably rely on its misrepresentations.  There are two defects in Pacific Life's argument.  First, Patel never signed the documents that Pacific Life relies on.[41]  Second, as the Texas Supreme Court has observed, a contractual provision that purportedly

---

[37] *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 354 (5th Cir. 1989).

[38] *Id.* (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991)); *see also Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) ("Rule 56(f) motions are generally favored and should be liberally granted.").

[39] *See Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1155-56 (5th Cir. 1993); *Int'l Shortstop*, 939 F.2d at 1267-68.

[40] *See* FED. R. CIV. P. 56(f).

[41] *See* App. at 5.

disclaims prior representations does not automatically waive the right to justifiably rely on those representations.[42]

Rather, as Patel has argued and many courts have acknowledged, determining whether reliance was justifiable requires examining the totality of the circumstances surrounding the documents in question.[43]   In fact, the Texas Supreme Court mandates that "[c]ourts must *always* examine the contract itself and the totality of the surrounding circumstances when determining whether a waiver-of-reliance provision is binding."[44]  The provision is binding if the surrounding circumstances show that the party expressed a clear and unequivocal intent to waive reliance on the specific representations at issue.[45]  When, like here, those surrounding circumstances reveal genuine issues of material fact, summary judgment is improper.[46]  The Court, therefore should deny Pacific Life's summary judgment motion.

### 1.    Courts Apply a Five-Factor Test to Examine the Totality of the Circumstances in Evaluating Waiver-of-Reliance Provisions.

The Texas Supreme Court outlined the factors used to evaluate waiver-of-reliance provisions in *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171 (Tex. 1997).  These factors are:  (1) whether the terms of the provision were negotiated or boilerplate, and whether the parties specifically discussed during the negotiations the issue at the heart of the subsequent dispute; (2) whether the plaintiff was represented by counsel; (3) whether the parties dealt with

---

[42] *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008) ("Today's holding should not be construed to mean that a mere disclaimer standing alone will forgive intentional lies regardless of context.  We decline to adopt a per se rule that a disclaimer automatically precludes a fraudulent-inducement claim . . . .").

[43] *See id.* at 60.  Patel originally addressed this issue in his Response to Pacific Life's Motion to Dismiss ("Patel's Response") at 10-13 (Docket No. 18).

[44] *Id.* at 60 (emphasis added).

[45] *See id.*

[46] *See Thomas v. N.A. Chase Manhattan Bank*, 1 F.3d 320, 326 (5th Cir. 1993) (reversing summary judgment where genuine issues of material fact existed regarding plaintiff's justifiable reliance).

each other at arm's length; (4) whether the parties were sophisticated in business matters; and (5) whether the release language was clear.[47]

But at the outset, it is important to note that the *Schlumberger* factors were created to address situations where a party actually signs a document that purports to waive the right to rely on another's representations. Here, Patel did not sign the documents that Pacific Life claims bar his justifiable reliance.[48] Summary judgment should be denied on that fact alone. Patel obviously did not clearly and unequivocally intend to waive reliance on Pacific Life's representations — he never orally agreed to such a waiver and never signed a document evidencing such an intent. Further, as one of the surrounding circumstances that the Court must examine, the mysterious unauthorized signature on the purported waiver poisons the well and prevents any *Schlumberger* factor from supporting summary judgment.

**2.   Each of the Applicable Factors Weighs Against Summary Judgment.**

The evidence already available precludes summary judgment regarding Patel's justifiable reliance. That evidence, when combined with the fact that Patel never signed the documents purportedly waiving his reliance on Pacific Life's representations, raises a multitude of genuine issues of material fact.

**a.   The Contract Terms Were Boilerplate and Not Negotiated.**

The first *Schlumberger* factor — whether the waiver-of-reliance provision was boilerplate or negotiated — weighs against summary judgment.[49] This factor also inquires whether the parties specifically discussed the issue at the heart of the subsequent dispute.[50] Here,

---

[47] *Forest Oil*, 268 S.W.3d at 60.

[48] App. at 5; *see also* Pacific Life's Motion to Dismiss Ex. B.

[49] *See* App. at 5.

[50] *See id.*

that issue would be Patel's right to rely on those representations from Pacific Life that induced Patel to establish his 412(i) plan and fund it with a Pacific Life insurance policy.

In some situations, like those at issue in the *Forest Oil* and *Schlumberger* cases, parties have negotiated a resolution to an ongoing dispute and specifically discussed their waiver of reliance on the other party's representations.[51] That is not the case here. As explained in Patel's declaration, the purported waiver-of-reliance provisions were not negotiated.[52] They were boilerplate documents, which Patel affirms he never saw or discussed before creating the Patel DBP and most certainly never signed.[53]

Patel's declaration further attests that Pacific Life never explained that he could not rely on the misrepresentations and omissions that induced him to set up Patel DBP.[54] So the parties not only dealt with non-negotiable boilerplate documents, they failed even to discuss whether Patel was waiving his right to rely on everything he had just been told about the purported 412(i) plan by Pacific Life.[55] The first *Schlumberger* factor strongly supports denial of Pacific Life's motion.

### b.   Patel Did Not Have Counsel Present.

The second *Schlumberger* factor — whether Plaintiffs had counsel present during negotiations or at execution — also weighs against summary judgment.[56] In the *Schlumberger* and *Forest Oil* cases, the parties consulted their own independent legal counsel regarding the

---

[51] *See Forest Oil*, 268 S.W.3d at 53-54, 58; *Schlumberger*, 959 S.W.2d at 180.

[52] *See* App. at 5.

[53] *See id.*

[54] *See id.*

[55] *See id.*

[56] *See Forest Oil*, 51 S.W.3d at 60.

underlying contracts.[57]   Here, on the other hand, Patel never consulted independent legal counsel before creating the Patel DBP.[58]   Nor was he advised to do so by a Pacific Life representative (including Cushner).[59]   The document that Pacific Life relies on to prove Patel was advised to seek independent counsel is, itself, *unsigned*.[60]   And naturally, Patel could not have had legal counsel present at a signing that never took place.   Someone else signed the alleged waiver without Patel's consent.[61]

**c.**     **The Contract Was Not the Result of an Arm's-Length Transaction.**

The third *Schlumberger* factor also supports denial of summary judgment.   This situation was not at all like the arm's-length transactions addressed in *Schlumberger* and *Forest Oil*.[62] Unlike the parties involved in those cases, Patel created the Patel DBP solely on the advice and guidance of Cushner, who was his good friend as well as his sole financial advisor.[63]   And because Patel already trusted his close friend to make other investment decisions for him, he felt no need to double-check Cushner's representations and recommendations[64] as he would have had this truly been an arm's-length transaction.   Moreover, Cushner's repeated misrepresentations that creating the Patel DBP and funding it with Pacific Life insurance policies was a "risk-free"

---

[57] *See Schlumberger*, 959 S.W.2d at 180 ("In negotiating the release, highly competent and able legal counsel represented both parties . . . .").

[58] *See* App. at 4-5.

[59] *See id.*

[60] *See* Pacific Life's Motion to Dismiss Ex. B.

[61] App. at 5.

[62] *See Forest Oil*, 268 S.W.3d at 52 (describing negotiations at issue as arm's-length); *Schlumberger*, 959 S.W.2d at 180 (same).

[63] *See* App. at 2-4.

[64] Patel actually sought Cushner's guidance as to whether a 412(i) plan would suit his specific needs and goals after receiving a solicitation in the mail from another 412(i) broker. *See* App. at 3.

11

investment that satisfied all applicable laws and regulations acted to dissuade Patel from seeking a second opinion.[65] There was no reason to do so or any indication that he should.

### d.    Patel Lacked Business Sophistication in This Specialized Matter.

Likewise, the fourth *Schlumberger* factor weighs against summary judgment.  The *Schlumberger* and *Forest Oil* plaintiffs had substantial expertise in the subjects being negotiated.[66]  Yet Patel is not and does not claim to be a sophisticated businessperson particularly in the specialized pension and tax issues being presented by Pacific Life.[67]  He is a physician who runs a solo practice and had no prior experience creating or setting up a defined benefit plan.[68]  He has no experience working for a multi-national, billion-dollar corporation like Pacific Life.[69]  When one combines Patel's lack of business experience with the fact that he did not sign the alleged waiver, the fourth *Schlumberger* factor unmistakably weighs against summary judgment.

### e.    The Contract Language Was Unseen and Unexplained.

Applying the fifth *Schlumberger* factor — whether the language of the alleged waiver is clear — to the available evidence also reveals genuine issues of material fact.  Like the overall five-factor test, this individual factor looks at the alleged waiver in the context of the surrounding circumstances.  At the risk of redundancy, the most glaring of these circumstances is that Patel never saw or signed the alleged waiver.  His never seeing the alleged waiver makes determining whether its provisions are clear completely irrelevant.  Likewise, before Pacific Life's Motion to

---

[65] *See* App. at 3-4.

[66] *See Forest Oil*, 268 S.W.3d at 52; *Schlumberger*, 959 S.W.2d at 180 (noting that plaintiffs had been involved in area at issue for several decades).

[67] *See* App. at 5-6.

[68] *See id.* at 2, 5-6.

[69] *See id.* at 5-6.

Dismiss, Patel was never made aware of the alleged waiver.[70]  It is not as though the alleged waiver provisions were explained to him in an unclear manner.  They were never explained at all.[71]  So between Patel never seeing the alleged disclaimer and its contents never being relayed to him, it is impossible for this fifth *Schlumberger* factor to support summary judgment.  And to categorize this factor as neutral would unfairly prejudice Patel.  That Pacific Life may have written a disclaimer that Patel never saw and never was made aware of cannot, in equity, be used to disprove his justifiable reliance.  Patel should be allowed to pursue his claims and not be penalized for a document that he never signed, saw, or learned of before filing this lawsuit.  Therefore, summary judgment is not proper.

## B.   ALTERNATIVELY, LIMITED DISCOVERY IS NECESSARY TO PROVIDE ADDITIONAL EVIDENCE TO REBUT PACIFIC LIFE'S MOTION.

Patel alternatively files this Rule 56(f) motion because he has not had the opportunity to obtain discovery and bring forward to the Court even more relevant evidence as to the totality of the circumstances surrounding the creation and execution of the alleged waiver-of-reliance documents.  Patel easily satisfies three of the requirements for a Rule 56(f) continuance.  First, Patel has requested the continuance prior to the Court's ruling on summary judgment.  Second, Patel has put the Court on notice that he seeks discovery pertaining to the summary judgment motion.[72]  Third, though discovery has not yet commenced, Patel has diligently pursued relevant discovery through his alternative Rule 56(f) request.[73]  As shown below, Patel can satisfy the fourth factor for a Rule 56(f) continuance by demonstrating how the requested discovery pertains to the pending motion.

---

[70] *See id.* at 5.

[71] *See id.*

[72] App. at 9-11 (Affidavit of Eric D. Madden ¶¶ 7-9).

[73] App. at 11 (Affidavit of Eric D. Madden ¶ 8).

Pacific Life premises its motion on the waiver-of-reliance provisions contained in some of the underlying documents. It would have this Court believe that justifiable reliance can be determined as a matter of law solely based upon these few documents. Yet, as discussed above, courts analyze the totality of the circumstances — and not just the documents themselves — in evaluating justifiable reliance. Accordingly, the Court must analyze, *inter alia*, the following issues of fact:

- Whether Cushner (or someone other than Patel) signed the alleged waiver;

- Whether the other signature that appears on Exhibit C was properly procured, and under what circumstances;

- Whether the other signature that appears on Exhibit C is that of someone that was tasked with providing any financial advice to Patel;

- Whether Pacific Life informed Cushner that Patel's application was missing a signature as to the alleged waiver-of-reliance provisions, and if so, what action Pacific Life took to remedy the missing signature;

- What, if any, effort Pacific Life made to verify whether the signature on the alleged waiver was, in fact, Patel's or at least authorized by him;

- What, if any, safeguards Pacific Life had in place to verify whether the signatures appearing on other applications for life insurance policies being obtained to fund 412(i) plans were valid;

- Why Cushner did not present the alleged waiver to Patel for his review;

- Why Cushner did not discuss the alleged waiver with Patel;

- How many times Cushner signed Patel's name to a document without his permission;

- Whether Pacific Life provided Cushner with any instructions and/or training regarding the waiver-of-reliance provisions;

- Whether Pacific Life provided any information to Cushner regarding the purpose or intent of these provisions;

- Whether Pacific Life instructed Cushner to gloss over, ignore, or minimize these provisions in his discussions with prospective policyholders, including Patel;

- How many other times Pacific Life issued a life insurance policy in connection with a section 412(i) plan when the policyholder refused to sign and/or did not sign these waiver-of-reliance provisions;

- Whether Pacific Life authorized Cushner to negotiate and/or alter the terms of these provisions with prospective policyholders, including Patel;

- Whether Pacific Life ever negotiated and/or altered the terms of these provisions with prospective policyholders;

- Whether Pacific Life was represented by counsel in connection with the drafting of these provisions;

- Whether Pacific Life considered any alternate language in drafting these provisions and, if so, why that language was rejected;

- Whether Pacific Life intended these provisions to be clear and unambiguous; and

- Whether Pacific Life had substantial experience and knowledge with respect to defined benefit plans, including section 412(i) plans and the applicable requirements for such plans.

Most, if not all, of the evidence needed to resolve the aforementioned factual issues lies exclusively within the possession of Cushner and Pacific Life.[74]  Based upon the limited information available at this early stage in the case, Patel believes that evidence will likely show, *inter alia*, that:  (1) Cushner signed the alleged waiver without Patel's permission; (2) Cushner did not bring the alleged waiver with him to Dallas when he met with Patel in February 2003; (3) Pacific Life would not accept an unsigned waiver and would not allow a prospective policyholder to negotiate or alter the terms of that waiver; (4) Pacific Life was represented by counsel in the drafting of the waiver-of-reliance provisions; (5) Pacific Life had substantial knowledge and experience in matters related to section 412(i) plans and these waiver-of-reliance

---

[74] App. at 11 (Affidavit of Eric D. Madden ¶ 8).

provisions; (6) Pacific Life knew that these provisions would be unclear and ambiguous to prospective policyholders; and (7) Pacific Life considered and rejected alternate language that would have been less ambiguous and unclear.

This evidence would raise a plethora of fact issues related to justifiable reliance and the waiver-of-reliance provisions relied upon by Pacific Life. For example, if Pacific Life never negotiated or altered the terms of these provisions with prospective policyholders, it would tend to show that these waiver-of-reliance provisions were mere boilerplate under the first *Schlumberger* factor. The second and third *Schlumberger* factors would be implicated if Pacific Life took any actions to discourage prospective policyholders from getting independent counsel or other professional advisors directly involved in the discussions. Pacific Life undoubtedly has substantial knowledge and experience with section 412(i) plans, the applicable requirements for such plans, and the waiver-of-reliance provisions, all of which directly relate to the fourth *Schlumberger* factor. Finally, the fifth *Schlumberger* factor would be implicated if Pacific Life knew the waiver-of-reliance provisions were ambiguous and/or took affirmative steps to avoid clarifying these provisions for prospective policyholders, including Patel.

In sum, the evidence likely to be uncovered in discovery would create genuine issues of material fact, thereby defeating the summary judgment motion advanced by Pacific Life. Yet Patel needs to conduct targeted discovery directed at these issues in order to obtain the relevant and necessary evidence from Pacific Life.[75] Specifically, Patel needs to: (1) serve narrowly tailored requests for production of documents, requests for admissions, and interrogatories on Pacific Life; and (2) serve narrowly tailored requests for production for documents on Cushner.[76] Patel then needs to: (1) depose Cushner; (2) take a limited Rule 30(b)(6) deposition Pacific Life;

---

[75] App. at 9-11 (Affidavit of Eric D. Madden ¶¶ 7-9).

[76] *Id.*

and (3) depose the TaxProFinancialServices representative[77] that also allegedly signed Exhibit C to further explore the issues discussed above.[78] Patel has had no opportunity whatsoever to obtain this discovery that is so material to the motion before the Court.[79] Accordingly, the Court should grant a Rule 56(f) continuance in order to allow discovery and make a fully informed decision on the merits.[80]

## V. CONCLUSION

Patel respectfully requests that the Court deny Pacific Life's summary judgment motion or, alternatively, grant a Rule 56(f) continuance to allow Patel to take targeted discovery in order to present the Court with additional relevant evidence in response to the issues raised by the pending motion.

---

[77] Although the signature is hard to decipher, Patel believes that the other signature that appears on Exhibit C is that of Steve Saba, an accountant who has worked with Cushner.

[78] App. at 11 (Affidavit of Eric D. Madden ¶ 9).

[79] App. at 11 (Affidavit of Eric D. Madden ¶ 8).

[80] See, e.g., Wichita Falls Office Assocs. v. Bank One Corp., 978 F.2d 915, 920 (5th Cir. 1992) (stating that when a party "is seeking discovery that is germane to the pending summary judgment motion it is inequitable to pull out the rug from under them by denying such discovery").

Respectfully submitted,

**DIAMOND MCCARTHY LLP**

*/s/ Eric D. Madden*
Eric D. Madden
State Bar No. 24013079
Brandon V. Lewis
State Bar No. 24060165
1201 Elm Street, Suite 3400
Dallas, Texas  75270
(214) 389-5300 (telephone)
(214) 389-5399 (facsimile)

-and-

**MCKOOL SMITH, PC**
Gary Cruciani
State Bar No. 05177300
Michael P. Fritz
State Bar No. 24036599
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000 (telephone)
(214) 978-4044 (facsimile)

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all parties listed on this certificate of service will receive a copy of the foregoing document filed electronically with the United States District Court for the Northern District of Texas, Dallas Division, on this 12th day of January, 2009, with notice of case activity generated and ECF notice to be sent electronically by the Clerk of the Court. A copy will be sent via electronic mail to those who do not receive ECF notice:

James R. Carroll
Kurt Wm. Hemr
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108-3194

Charles W. Schwartz
Celso M. Gonzalez-Falla
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1000 Louisiana, Suite 6800
Houston, Texas 77002-5026

Michelle L. Davis
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Rodney Square
Wilmington, DE 19899-0636

/s/ Eric D. Madden
Eric D. Madden