## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| PRATUL M. PATEL, et al., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | CIVIL ACTION NO. 3:08-CV-0249-B |
| v. | § | |
| | § | |
| PACIFIC LIFE INSURANCE | § | |
| COMPANY, et al., | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION

Before the Court are: Plaintiffs' Motion to Strike Exhibits Attached to Defendant Pacific Life Insurance Company's Motion to Dismiss and Supporting Memorandum of Law, filed September 22, 2008 (doc. 19)[1]; Defendant Pacific Life's Motion to Dismiss and Brief in Support, filed October 24, 2008 (doc. 31); and Bryan Cave LLP's and Richard C. Smith's Motion to Dismiss First Amended Complaint and Brief in Support, filed December 31, 2008 (doc. 45). Having considered the motions, responses, replies, pleadings and applicable law, for the reasons set forth below, the Court: GRANTS Plaintiffs' Motion to Strike Exhibits; GRANTS Pacific Life's Motion to Dismiss; and GRANTS Bryan Cave LLP's and Richard C. Smith's Motion to Dismiss.

---

[1]Plaintiffs' Motion to Strike Exhibits (doc. 19) was filed in response to Pacific Life's initial motion to dismiss and the appendix thereto (*see* docs. 11 and 12). After Plaintiffs filed an amended complaint (doc. 23), and Pacific Life filed the instant amended motion to dismiss, the Court denied as moot Pacific Life's original motion to dismiss. Pacific Life has included the same exhibits in support of its amended motion to dismiss. Accordingly, although not indicated as such on the CM-ECF docket sheet, Plaintiffs' Motion to Strike Exhibits remains ripe for adjudication.

1

# I.

# BACKGROUND

A.      *Factual Background*

As gleaned from the First Amended Complaint, this case arises from the promotion and sale by the Defendants of a tax shelter marketed as a "defined benefit plan," which Defendants touted as qualifying for tax benefits under Section 412(i) of the Internal Revenue Code.[2]   According to Plaintiffs, unbeknownst to them at the time of purchase, in actuality the plan was an illegitimate tax shelter, and thus ineligible for 412(i) benefits.   To make matters worse, in 2005, the Internal Revenue Service conducted an audit of the plan, which resulted in substantial "audit-related fees and expenses," and, according to Plaintiffs, will likely result in significant tax liability, including disallowed deductions, penalties and interest.   (Compl. ¶ 54.)   Plaintiffs charge that Defendants knew or should have known that the plan would be scrutinized by the IRS and deemed abusive and illegal, but misrepresented and failed to disclose the risks associated with the plan, blinded by the prospect of earning enormous premiums and commissions from the sale of their plans as funded with specially-designed insurance policies.          Plaintiffs are Pratul M. Patel, M.D., P.A., a professional association organized under the laws of the State of Texas with a principal office in Dallas, Texas ("Patel P.A."), and its sole officer and member, Pratul M. Patel, M.D. ("Dr. Patel") (collectively, "Plaintiffs").   (Compl. ¶¶ 4, 5.)   Defendants are: Pacific Life Insurance Company ("Pacific Life"), which issued the life insurance policy; Arizona-based consulting firms E.C.I. Pension Services, L.L.C.

---

[2]A 412(i) plan under the Internal Revenue Code is an employer-sponsored pension plan that, upon meeting certain requirements, qualifies for favorable tax treatment.  *See* 26 U.S.C. § 412(e)(3) (West 2008). A 412(i) plan is funded with  insurance products.  The Pension Protection Act of 2006, Pub. L. No. 109-280, amended section 412(i), and relocated it to section 412(e)(3).

("ECI Pension") and Economic Concepts, Inc. ("ECI"), and ECI's Chief Executive Officer and sole shareholder Kenneth Hartstein (collectively, "Hartstein/ECI"), which promoted and sold the plan; and international law firm Bryan Cave L.L.P. and one of its attorneys, Richard C. Smith (collectively, "the Bryan Cave Defendants"), author of a 1999 legal opinion that the plan "more likely than not" would qualify as a 412(i) plan with its associated tax benefits.  (Compl. ¶¶ 6-13.)


B.    *Procedural History*

Plaintiffs filed this action on February 12, 2008, asserting claims against Pacific Life for violations of Article 21.21 of the Texas Insurance Code (Count One), negligent misrepresentation (Count Two), common law fraud (Count Three), violations of California Business and Professions Code section 17200, *et seq.* (Counts Four and Five) and civil conspiracy (Count Six).[3] Plaintiffs assert the following causes of action against the Bryan Cave Defendants: common law fraud (Count Three); civil conspiracy (Count Six); negligent misrepresentation (Count Seven); aiding and abetting common law fraud (Count Eight); breach of fiduciary duty (Count Nine); and professional negligence/malpractice (Count Ten).

On October 24, 2008, Pacific Life filed a motion to dismiss Counts One through Six of the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and/or 9(b).  Pacific Life contends that Plaintiffs' claims should be dismissed based on ERISA preemption.  Alternatively, Pacific Life argues that dismissal is required since all claims are time-barred under the applicable Texas statutes of limitations or, alternatively, because Plaintiffs have failed to state a claim upon

---

[3]Plaintiffs allege the same causes of action against Hartstein/ECI.  On June 30, 2008, Hartstein/ECI filed an Original Answer and Affirmative Defenses to Plaintiffs' Complaint. (Doc. 13.)

3

which relief may be granted.  Additionally,  Pacific Life argues that dismissal is required under Rule

9(b) for failure to plead fraud with the requisite particularity. On December 31, 2008, the Bryan

Cave Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of *in personam*

jurisdiction.  Alternatively, the Bryan Cave Defendants contend that all claims should be dismissed

pursuant to Federal Rules of  Civil Procedure 12(b)(6) and 9(b).  The Court next sets forth the

allegations from Plaintiffs' First Amended Complaint that are germane to the Court's resolution of

the pending motions to dismiss.

*Allegations of Conspiracy*

Plaintiffs allege, upon information and belief, that in the late 1990s, "Pacific Life conspired

with [Hartstein/ECI] and the Bryan Cave Defendants to design special life insurance policies, with

excessively high premiums, which were used in funding unique defined benefit pension plans under

Section 412(i)."  (Compl. ¶ 14.)  Plaintiffs further allege, on information and belief, that

Hartstein/ECI "and the Bryan Cave Defendants agreed with [Pacific Life] (and other insurance

companies) to market, sell, establish, and administer Section 412(i) plans (and to sell the high-

premium insurance policies used to fund these plans) by touting the alleged tax deductibility of these

premiums and the plan's alleged ability to provide significant retirement savings." (*Id.*)  Plaintiffs

allege Defendants "knew or should have known that these arrangements likely would be heavily

scrutinized by the IRS, be deemed abusive tax avoidance transactions by the IRS, and/or expose

those participating in such arrangements to costly IRS audits, including substantial tax liabilities,

penalties and interest."  (Compl. ¶ 15.)

*Allegations Regarding the "Bryan Cave Opinion" and the "Pendulum Plan"*

Plaintiffs allege that in the late 1990s, Hartstein/ECI, with substantial assistance from the

4

Bryan Cave Defendants, developed the "Pendulum Plan[,]" and that, on information and belief, "the Bryan Cave Defendants were retained by Plaintiffs via ECI and drafted the underlying plan documents for Plaintiffs' Pendulum Plan."  (Compl. ¶ 26.)   In September 1999, to assist Hartstein/ECI in marketing the Pendulum Plan, the Bryan Cave Defendants issued a legal opinion that the life insurance policy issued by Indianapolis Life Insurance Company or a "substantially similar policy" "more likely than not . . . can meet the requirements of section 412(i) of the Code" when used as "the funding vehicle" for the defined benefit plans being developed by Hartstein/ECI, and that the plan "should not be considered a tax shelter[.]"  (Compl. ¶ 27.)  Plaintiffs allege that "[a]rmed with the Bryan Cave Opinion (and all its defects), [Hartstein/ECI] proceeded to work together with Pacific Life to further develop and market this purported 412(i) arrangement [with] the marketing campaign focused, in large part, on the fact that the Bryan Cave Defendants had blessed the Pendulum Plan in the Bryan Cave Opinion."  (Compl. ¶ 29.)  Hartstein/ECI and Pacific Life "frequently distributed the Bryan Cave opinion during their sales pitches regarding the Pendulum Plan."  (*Id.*)  Plaintiffs allege that the Bryan Cave Defendants "understood and intended that the Bryan Cave Opinion would be – and was being – used to market the Pendulum Plan." (Compl. ¶ 30.)  Plaintiffs further allege that, in addition to issuing the Bryan Cave Opinion, "[t]he Bryan Cave Defendants were also engaged to draft plan documents and other documents necessary for the sale, adoption, and implementation of the versions of the Pendulum Plan sold to Plaintiffs by Pacific Life and [Hartstein/ECI]."  (Compl. ¶ 31.)

According to Plaintiffs, "Defendants knew or should have known that this arrangement would likely be deemed an abusive tax shelter by the [IRS] [since] Defendants were well aware of the multiple IRS announcements and notices regarding the issue [and] upon information and belief,

5

Pacific Life received explicit warnings from [its] professional advisors regarding the tax risks and problems associated with the use of [its] specially designed life insurance policies in funding 412(i) plans." (Compl. ¶ 33.)  Plaintiffs allege that "Defendants, however, were blinded by the lucrative prospect of reaping enormous premiums and commissions from the sale of their specially designed insurance policies [and] embarked on a nationwide campaign to market and sell such policies for use in funding 412(i) plans, but wholly failed to disclose the substantial risks and problems associated with these arrangements." (Compl. ¶ 34.)

*Allegations Regarding Establishment of Dr. Patel's Defined Benefit Plan*

Plaintiffs allege that in 2002, interested in what types of benefits a 412(i) plan could provide him, Dr. Patel contacted Frank Cushner ("Cushner"), his investment advisor at Merrill Lynch in New York. (Compl. ¶ 35.)  Dr. Patel told Cushner he was looking for a risk free investment vehicle and asked Cushner to assess whether a 412(i) plan would be right for him.  (*Id.*).  Cushner contacted Pacific Life, which referred him to Hartstein/ECI.  (*Id.*)  Plaintiffs allege that "[t]ogether these Defendants sold Dr. Patel on the 412(i) strategy and the insurance policies they had developed and were marketing."  (*Id.*)  Plaintiffs further allege that, enticed by the lucrative commission he could earn from selling the Pacific Life insurance policy to Dr. Patel, Cushner left Merrill Lynch and became an authorized agent for Pacific Life.  (*Id.*)  "Bolstered by representations from [Hartstein/ECI], the Bryan Cave Defendants, and Pacific Life, Cushner told Dr. Patel that a 412(i) plan was risk free and could provide him with the vehicle for retirement savings that he was looking for."  (*Id.*)

Cushner proposed that Dr. Patel form the Pratul M. Patel M.D., P.A. Defined Benefit Pension Plan ("Patel DBP"), which would be wholly funded by a life insurance policy issued by

6

Pacific Life, "a policy which Cushner, [Hartstein/ECI], the Bryan Cave Defendants and Pacific Life represented was in compliance with Section 412(i) of the Internal Revenue Code." (Compl. ¶ 36.) Plaintiffs allege that along with Hartstein/ECI, Cushner, acting as an agent for Pacific Life, promised and represented to Dr. Patel that such a plan would provide certain retirement benefits to Dr. Patel and his beneficiaries, as well as "federal income tax deductions for Patel P.A. related to its insurance premiums paid to Pacific Life" in connection with the Patel DBP. (Compl. ¶ 37.) Cushner also represented to Dr. Patel that he, Hartstein/ECI and Pacific Life had experience and expertise regarding defined benefit plans, insurance policies and related federal income tax matters. (*Id.*) "At no time did any Defendant, or Cushner, ever disclose to Dr. Patel (1) the high risks associated with this type of investment activity; (2) that this program could be considered abusive by the [IRS][;] or (3) that the IRS would likely not recognize the program's purported tax benefits." (*Id.*) Plaintiffs further allege that even after Dr. Patel sought assurances from Cushner that this type of program would pass muster with the IRS, "nobody said a word," and instead "Cushner promised Dr. Patel that he would receive large, tax-free returns from the 412(i) plan." (*Id.*)

Plaintiffs allege that in reliance on these promises and representations from Defendants and Cushner, as well the Bryan Cave Opinion, Dr. Patel established the Patel DBP, and purchased Policy No. VF50154060 from Pacific Life. (Compl. ¶ 38.) Plaintiffs further allege that the Bryan Cave Defendants, acting as Plaintiffs' attorneys, drafted the documents establishing the Patel DBP in or around May 2003. (*Id.*)

*Allegations of Internal Revenue Service Scrutiny and 2004 Revenue Rulings*

Plaintiffs allege that the IRS "does not recognize the purported tax benefits of abusive 412(i) plans," and that "[o]ver the past twenty years . . . the IRS has issued numerous announcements and

notices explaining that many of the characteristics of an abusive 412(i) plan are contrary to federal tax laws and regulations." (Compl. ¶ 25.)  Plaintiffs further allege that the "IRS had long criticized many of the same features that characterized the 412(i) plans and insurance policies that were marketed by Defendants." (Compl. ¶ 40.)  Plaintiffs allege that beginning in the early 2000s, the IRS "began to focus its scrutiny directly on these specific plans and policies," and began giving speeches at benefits conferences warning that the IRS intended to take steps to prevent the misuse of insurance products in 412(i) plans, "especially insurance policies designed to have low cash surrender values and high premiums for a fixed number of years[]" as well as the sale of those policies at artificially suppressed prices.  (Id.)  On January 31, 2003, Department of Treasury and IRS officials gave a speech at a benefits conference indicating that the IRS intended to give "very high priority" to examining "abusive insurance-funded defined benefit plans" that misuse Section 412(i), and remarked that the IRS will "not be gentle" when it retroactively examines "illegal Section 412(i) schemes[.]"  (Compl. ¶ 41.)

In February 2004, the IRS issued a press release, two revenue rulings, and proposed regulations "that confirmed what industry observers (including Defendants) had long recognized – that the 412(i) plans and policies being marketed by Defendants constituted illegal and abusive tax shelters." (Compl. ¶ 44.)  Plaintiffs allege that the IRS press release stated in part:

> Today, the Treasury Department and the [IRS] issued guidance to shut down abusive transactions involving specially designed life insurance policies in retirement plans, section "412(i) plans."  The guidance designated certain arrangements as "listed transactions" for tax-shelter reporting purposes.

(Id.)  The IRS's proposed regulations were issued on February 13, 2004, and finalized in August 2005.  (Compl. ¶ 46.)  Plaintiffs allege that "[t]he proposed regulations addressed the valuation of

insurance contracts 'that are structured in a manner that results in a temporary period during which neither a contract's reserves nor its cash surrender value represents the fair market value of the contract,' in many cases due to the operation of a large surrender charge that exists at the time that the contract is transferred to the beneficiary, but which later disappears." (*Id.*)  Plaintiffs further allege that "[s]ince the distribution of such contracts to beneficiaries understates the fair market value of those contracts, the IRS regulations restated the principle that such insurance contracts are to be valued at their fair market value (by taking into account the policy cash and all other rights under the contract)." (*Id.*)  Revenue Ruling 2004-20 stated that the issuance of life insurance policies greatly in excess of the permissible death benefit under a 412(i) plan is a "listed transaction" that is an abusive tax shelter.  (Compl. ¶ 47.)  The IRS stated that a plan holding such policies cannot be a 412(i) plan.  (*Id.*)  Pursuant to Revenue Ruling 2004-21, the IRS stated that funding a 412(i) plan with a different type of insurance policy for highly compensated employees compared with other employees will result in disqualification of the plan.  (Compl. ¶ 48.)

*Allegations Regarding Bryan Cave's March 16, 2004 Memorandum*

Plaintiffs allege that "[i]n the wake of these revenue rulings, the Bryan Cave Defendants advised [Hartstein/ECI] about ways to avoid IRS scrutiny." (Compl. ¶ 49.)  "In a memorandum dated March 16, 2004, the Bryan Cave Defendants informed [Hartstein/ECI] that employers sponsoring certain abusive 412(i) plans were required to file a Form 8886 with the IRS," which would disclose an employer's participation in what was now a "listed transaction." (*Id.*)  The Bryan Cave Defendants recommended that, to avoid IRS scrutiny, instead of filing the required Form 8886, employers instead simply file an amended tax return to reverse deductions. (*Id.*)  Plaintiffs allege, on information and belief, that the Bryan Cave Defendants knew that Hartstein/ECI would

9

distribute this memorandum to their clients, including Plaintiffs.  (Compl. ¶ 50.)  Plaintiffs allege

that Congress later imposed penalties on employers who failed to file Form 8886.  (Compl. ¶ 51.)

## II.

## ANALYSIS

### A.   Plaintiffs' Motion to Strike Exhibits

Plaintiffs have filed a motion to strike the five (5) exhibits attached to Pacific Life's Motion

to Dismiss.  (Doc. 19.)  These exhibits  include what Pacific Life asserts are: Dr. Patel's insurance

policy (including various application forms) (Exhibit A); an unsigned, undated "Illustration" for Dr.

Patel's policy (Exhibit B); a form entitled "Information Regarding 412(i) Plans" purportedly signed

by Dr. Patel (Exhibit C); and information from various websites, including the Texas Division of

Insurance, pertaining to Cushner's employment profile (Exhibits D and E).  (Doc. 12.)

The Court may consider documents on a motion to dismiss without converting that motion

into one for summary judgment where the documents are central to the plaintiffs' claims and are

referred to in the complaint.  *In Re Katrina Canal Breaches Lit.*, 495 F.3d 191, 205 (5th Cir. 2007)

(considering insurance contracts on a motion to dismiss); *Causey v. Sewell Cadillac-Chevrolet, Inc.*,

394 F.3d 285, 299 (5th Cir. 2004) (affirming dismissal of defendant under 12(b)(6) based on

consideration of documents that explained the legal relationship between the defendants); *Collins

v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (approving consideration of

documents attached to motion to dismiss noting that "[i]n so attaching, the defendant merely assists

[. . .] the court in making the elementary determination of whether a claim has been stated.").

Plaintiffs argue that these exhibits should be stricken and not considered by the Court

because they are not authenticated, are neither referred to in the complaint nor central to the

10

claims, and are being used for an improper purpose at the motion to dismiss stage, namely to controvert Plaintiffs' allegations.  (Pl. Mot. to Strike at 5-7; Pl. Reply at 2-4.)[4]  In response, Pacific Life argues that the insurance policy and application in Exhibit A are referenced in the complaint and central to Plaintiffs' claims, that the "transaction documents" in Exhibits B and C are central to Plaintiffs' claims and that Exhibits D and E are public records on the internet of which the Court may take judicial notice.

Exhibit A is a policy listing Dr. Patel as the insured, along with associated application documents.  The policy issued by Pacific Life is referenced in the Complaint, and Plaintiffs' claims originate from the marketing and sale of the Pacific Life policy.  Although the Court may therefore consider the policy under applicable law, the Court determines that such consideration is not necessary to resolve the issues presented at this juncture.  As to the insurance application documents also contained in Exhibit A, the Court concludes they do not appear to be central to the claims and are not referenced in the Complaint.  With regard to Exhibit B, the "Illustration," the Court notes that it is unsigned and undated, and Plaintiffs question its authenticity.  Further, the "Illustration" does not appear to be central to Plaintiffs' claims and is not referenced in the Complaint.  Pacific Life's contention that Texas law requires an insurance company to provide the insured with an

---

[4]In the alternative, Plaintiffs requested that the Court convert Pacific Life's motion to dismiss into a motion for summary judgment, and allow Plaintiffs discovery.  (Pl. Reply at 2.)  On December 17, 2008, the Court converted Pacific Life's motion into a summary judgment motion to consider the matters outside the pleadings in Pacific Life's appendix relating to whether Dr. Patel could have justifiably relied on alleged representations by Pacific Life agents in the face of a disclaimer of reliance. (Doc. 44.) Subsequent to the conversion, Plaintiffs submitted an affidavit signed by Dr. Patel testifying that the signature on the disclaimer of reliance was not his.  (Doc. 52, ¶ 11.)  On February 4, 2009, Pacific Life informed the Court that, in light of Dr. Patel's affidavit testimony, it was no longer requesting entry of judgment as a matter of law at this juncture on the basis of the purported disclaimers.  (Doc. 57.)  In light of Pacific Life's position, the Court vacated its December 17, 2008 conversion Order.  (Doc. 68.)

"Illustration" along with the policy, does not alter the Court's analysis.   As to Exhibit C, as already noted (*see supra* note 4), after Dr. Patel filed an affidavit testifying that the signature on Exhibit C was not his, Pacific Life informed the Court that it was no longer requesting entry of judgment as a matter of law on the basis of the purported disclaimer at Exhibit C.   As Pacific Life no longer relies on Exhibit C, the Court need not consider the motion to strike as to Exhibit C.   As to Exhibits D and E, while the Court can certainly take judicial notice of the information therein, Pacific Life has included these exhibits to contradict Plaintiffs' allegation in the First Amended Complaint that Cushner, after leaving Merrill Lynch, became a Pacific Life agent.   (*See* Compl. ¶¶ 35-39.) Specifically, Pacific Life refers to Exhibits D and E in its motion to dismiss to establish that Plaintiffs' agency allegation is incorrect, and that Cushner was appointed solely to accept applications on behalf of Pacific Life on December 18, 2002, and did not leave Merrill Lynch until February 2003, after which he became a registered representative at the Commonwealth Financial Network.   (*See* Pac. Life Mot. to Dismiss at 3, note 2.)   As the Court is confronted with a motion to dismiss for failure to state a claim, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the Plaintiffs. *Sonnier v. State farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).   Accordingly, Exhibits D and E, to the extent Pacific Life uses them to controvert Plaintiffs' allegations of agency, will not be considered by the Court.   Based on the foregoing analysis, the Court GRANTS Plaintiffs' Motion to Strike Exhibits Attached to Defendant Pacific Life Insurance Company's Motion to Dismiss (doc. 19).

**B.**   **Pacific Life's Motion to Dismiss**

   **1.**   **Legal Standard - Fed. R. Civ. P. 12(b)(6)**

   In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure

to state a claim, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004). A 12(b)(6) motion to dismiss should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a 12(b)(6) motion, the complaint must contain plausible grounds to show entitlement to relief, not just "labels and conclusions." *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level [. . .] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Southwestern Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey*, 394 F.3d at 288.

2.      **Grounds for Pacific Life's Motion to Dismiss**

As already stated, Pacific Life has filed a motion to dismiss Counts One through Six based on ERISA preemption and for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and/or Fed. R. Civ. P. 9(b). Pacific Life contends that Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) as (i) all claims are time-barred under the applicable Texas statutes of limitations, and (ii) Plaintiffs have failed to state a claim upon which relief may be granted. Additionally, Pacific Life argues that dismissal is required under Rule 9(b) for failure to plead fraud with the requisite particularity.

13

The Court turns first to Pacific Life's arguments based on ERISA preemption and the statute of limitations and next examines Pacific Life's motion to dismiss Plaintiffs' non-statutory state law claims (Counts Two, Three and Six), followed by its motion to dismiss Plaintiffs' statutory claims (Counts One, Four and Five).

Because all claims in this matter are state law claims, the Court's jurisdiction is based on diversity. 28 U.S.C. §1332. Thus, Texas state substantive law, including precedent on choice of law and federal procedural law, will be applied. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Plaintiffs assume in their briefing that Texas law applies to their claims for fraud, negligent misrepresentation and civil conspiracy, and Pacific Life does not specifically argue the application of any other state's laws.[5] Accordingly, as the parties presume the application of Texas law to these non-statutory claims, the Court assumes, without deciding, that Texas law governs. *See Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 705 (5th Cir. 1999) (applying Texas law to dispute where parties assumed Texas law applied). Moreover, to the extent Pacific Life is challenging the pleadings under Rule 8 and Rule 9(b), in diversity actions, federal law governs pleading requirements. *Colonial Penn. Ins. Co. v. Market Planner Ins. Agency*, 1 F.3d 374, 376 (5th Cir. 1993).

    a.        **ERISA Preemption**

---

[5]The Court notes that Pacific Life relies on California law to support its argument that the disclaimers of reliance purportedly signed by Dr. Patel (*see* Exs. B and C to Pac. Life Mot. to Dismiss) entitle it to judgment as a matter of law on Plaintiffs' fraud-based claims. (*See* Pac. Life Mot. to Dismiss at 13 (citing *Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.*, 2008 WL 1925248, at **3-5 (S.D. Cal. Apr. 19, 2008).); (Pac. Life Reply at 6) (same). In light of the Court's decision to grant Plaintiffs' Motion to Strike Exhibit B (*see supra* at 10-12), and Pacific Life's explicit abandonment of this argument (doc. #57) (*see supra* note 4), the Court need not determine at this time whether California law is applicable to Plaintiffs' non-statutory state law claims.

Pacific Life argues that Plaintiffs' claims are all preempted by the Employee Retirement Income Security Act ("ERISA").  29 U.S.C. §1001, *et. seq.*  The Court disagrees.  ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . .." 29 U.S.C. § 1144(a).  Although this express statutory preemption is very broad, courts focus on "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."  *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001).  In accounting for the objectives of Congress as embodied in the ERISA statute, the Fifth Circuit requires a defendant asserting preemption to prove that: (1) the claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan" and (2) the claim "directly affects the relationship among traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries."  *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 800 (5th Cir. 2008) (finding no preemption where employees' complaint was fraudulent inducement to end their employment for which they "need not prove that any aspect of [plan] administration [. . .] was improper").

Pacific Life fails to satisfy this two-part test.  In fact, Pacific Life has not presented any argument regarding the test.  (*See* Pac. Life Mot. to Dismiss at 23-24; Pac. Life Reply at 14.)  With respect to the first prong of the test, Plaintiffs' claims are all state tort or state statutory claims.  It is the tax consequences of the insurance policy used to fund the plan, rather than the merits of plan itself, that underlie Plaintiffs' case.  While evaluation of the claims will potentially involve interpretation of the insurance policy and the Internal Revenue Code, Pacific Life has not demonstrated that it will require an evaluation of the defined benefit plan itself.  Nor has Pacific Life shown that the claim directly affects a relationship between traditional ERISA entities.  There are

15

no claims brought by the plan administrators or anyone purporting to act on behalf of Plaintiffs'

defined benefit plan. The Fifth Circuit has repeatedly found, under similar circumstances, that

ERISA does not preempt a state fraud claim. *Smith v. Texas Children's Hosp.*, 84 F.3d 152, 155 (5th

Cir.1996) (fraud claims not preempted by ERISA because resolution did not depend on the scope

of plaintiff's rights under the ERISA plan); *Hubbard v. Blue Cross & Blue Shield Assoc.*, 42 F.3d 942,

946-47 (5th Cir.1995) (no preemption of fraudulent inducement claim even though it involved

traditional ERISA entities); *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir.1990) (claims for

fraudulent inducement to enter into a plan not preempted by ERISA). *See also Cotner v. Hartford

Life & Annuity Ins. Co.*, 2008 WL 59174, at *4 (N.D. Tex Jan. 4, 2008)(Fish, J.) (no ERISA

preemption where complaint alleged that insurance company's agents misrepresented tax benefits

of 412(i) plan to medical professionals, since "alleged misrepresentations and omissions by

defendants predate the creation of the plan[.]").

   In sum, the Court rejects Pacific Life's argument that Plaintiffs' state law claims are

preempted by ERISA. Pacific Life has not established that Plaintiffs' claims as currently pled trigger

an ERISA-type analysis of the scope of Plaintiffs' defined benefit plan or involve plan interpretation

or administration, and, in any event, the alleged misrepresentations predate the creation of the Patel

DBP. Accordingly, Pacific Life's motion to dismiss based on ERISA preemption is DENIED.

### b.      Statute of Limitations

   Pacific Life moves to dismiss Counts One through Six as barred by the applicable statute of

limitations. (Pac. Life Mot. to Dismiss at 7-10.) In response, Plaintiffs contend that the discovery

rule tolls the statute of limitations and the fraudulent concealment doctrine bars any limitations

defense. (Pl. Resp. to Pac. Life Mot. at 3-6.) While the Court is permitted to consider a statute of

16

limitations argument on a Rule 12(b)(6) motion to dismiss, "such motion cannot be granted unless the limitations defense is clear on the face of the complaint." *Rice v. Interactive Learning Sys., Inc.*, 2007 WL 2325202, at *2 (N.D. Tex. Aug. 10, 2007) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)). While the First Amended Complaint does not specify the time period involved, "there is no affirmative duty on the plaintiffs to plead facts in their complaint necessary to defeat a statute of limitations defense." *Id.* Moreover, the Court rejects Pacific Life's reliance on the unsigned, undated "Illustration" (*see* Ex. B to Pac. Life Mot. to Dismiss), to support its argument that "Dr. Patel could have – and should have, as a matter of law – discovered any purported misrepresentations or omissions by reading the transaction documents provided to him on or before March 6, 2003. These transaction documents explicitly informed Dr. Patel that Pacific Life made no representation that the Patel Plan would satisfy § 412(i)." (Pac. Life Mot. to Dismiss at 7-8.) For the reasons already stated above in connection with the Court's decision to grant Plaintiffs' Motion to Strike Exhibits (*see supra* at 10-12), the unsigned, undated Illustration (Ex. B) cannot be considered on a Rule 12(b)(6) motion to dismiss. In sum, as the Court determines that the affirmative defense of statute of limitations is not clear from the face of Plaintiffs' First Amended Complaint, Pacific Life's motion to dismiss on this ground is DENIED.

### c.    The Non-Statutory State Law Claims

To reiterate, Plaintiffs allege that Pacific Life is liable for common law fraud (Count Three) and negligent misrepresentation (Count Two) based on representations and omissions made by Pacific Life's agent, Cushner, pertaining the viability of the Patel DBP under Section 412(i) of the Internal Revenue Code. Plaintiffs also allege a conspiracy among Defendants to design, promote and sell the noncompliant defined benefit plan (Count Six). Pacific Life has moved to dismiss Counts

17

Two, Three and Six for failure to plead fraud with the requisite particularity under Fed. R. Civ. P. 9(b), and for failure to state a claim under Rule 12(b)(6). The Court now addresses these arguments.

### i.        Common Law Fraud (Count Three)

A dismissal for failure to plead fraud with particularity in accordance with Federal Rule of Civil Procedure 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). Rule 9(b) provides, in pertinent part, that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). "When a limitation period looms large and the context strongly suggests that claimed 'fraud' walks close to non-actionable expression of opinion, 9(b) takes on especial force." *Williams*, 112 F.3d at 178. In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Essentially, the standard requires the Complaint to allege answers to "newspaper questions" ("who, what, when, where, and how") of the alleged fraud. *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

Pacific Life argues that Plaintiffs' fraud allegations fail to satisfy the Fifth Circuit's test in several respects. First, Pacific Life contends that Dr. Patel does not allege when Cushner made any

representations to him or showed him any documents.  According to Pacific Life, "[t]his pleading unfairly attempts to tie Pacific Life's hands where, as here, a limitation period looms large." (Pac. Life Mot. to Dismiss at 10.)  Second, Pacific Life contends that Dr. Patel does not identify the specific purported misrepresentations or whether they were made orally or in writing.  Next, Pacific Life argues that Plaintiffs have not pleaded agency with the requisite particularity.  Last, Pacific Life contends that Dr. Patel "pleads no facts as to why the purported misrepresentations were fraudulent at the time they were made." (*Id.* at 11.)  The Court will address these arguments in turn.

As to Pacific Life's contention that Dr. Patel does not allege when Cushner made any representations to him or showed him any documents, the Court agrees.  The First Amended Complaint contains no allegations regarding when Cushner made the alleged misrepresentations and omissions.  Plaintiffs' belief that Pacific Life knows when the misrepresentations and omissions took place (*see* Pl. Resp. at 6-7), does not relieve Plaintiffs of the heightened pleading requirements of Rule 9(b).  Further, as to the second alleged pleading infirmity identified above, the current allegations are specific enough to answer the "who and what" (*see infra* at 21-22, but they do not answer the "how," by failing to specify whether a statement was oral or written, nor do they answer the "where" question by failing to specify even the state, much less a more precise location, in which these representations were made.  As currently pled, the First Amended Complaint does not sufficiently connect the alleged fraudulent misrepresentations (and omissions) and their form (oral or written), to the time and place in which they were made, to meet the specificity required in the Fifth Circuit.

With respect to the agency issue, Pacific Life contends that Plaintiffs are required to plead agency with particularity under Rule 9(b), which they fail to do. (*See* Pac. Life Mot. to Dismiss at

11 (and cases cited therein).)  Plaintiffs contend that, under the circumstances of this case, they need only comply with Rule 8(a).  While the parties have not presented the Court any Fifth Circuit authority on the issue, a close reading of the cases cited persuades the Court that Plaintiffs' agency allegations need only satisfy Rule 8(a)'s pleading requirements, not the heightened standards of Rule 9(b).

Several courts have held that "when agency is an element of a fraud claim, agency must be pleaded with the particularity required under Rule 9(b)."  *Whitney Nat'l Bank v. Medical Plaza Surgical Center, LLP*, 2007 WL 400094, at *3 (S.D. Tex. Feb. 1, 2007) (and cases cited therein).  While Pacific Life cites this standard, it ignores that those courts requiring compliance with Rule 9(b) are generally confronted with allegations that the agency itself was a fraud, and that defendants created the appearance of an agency relationship to facilitate fraud.  *See also Kolbeck v. LIT Am., Inc.*, 923 F.Supp. 557, 569-70 (S.D.N.Y. 1996) (plaintiffs obliged to plead fraud with particularity where "plaintiffs claim that the agency itself was a fraud, and that defendants created the appearance of an agency relationship to facilitate [defendant's] perpetration of commodities fraud"); *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 291 (S.D.N.Y 2005), *aff'd*, 152 F.3d 918 (2d Cir. 1998) (plaintiffs must allege agency with Rule 9(b) particularity only when "the false appearance of an agency relationship was part of the alleged fraud.").  Further, the Seventh Circuit in *Lachmund v. ADM Investor Svcs.*, 191 F.3d 777, 783 (7th Cir. 1999), held: "[W]hen the plaintiff relies on the same circumstances to establish both the alleged fraud and the agency relationship of a defendant, the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim."

The claims here are factually distinguishable from those involved in the foregoing cases.  In

20

contrast to those cases, Plaintiffs here do not allege apparent authority, and do not allege that the agency relationship was part of the fraud in the sense that they allege they were injured because Pacific Life and Cushner led them to believe that Cushner was Pacific Life's agent, when he was not. Plaintiffs here allege an actual agency relationship between Cushner and Pacific Life, and that Pacific Life is thus vicariously liable for Cushner's alleged torts.   The Court determines that this allegation of agency is not so intertwined with the fraud allegation that it is part of the fraud itself. Accordingly, Plaintiffs need only satisfy Rule 8(a), which they have.  *See generally In re Parmalat Sec. Litig.*, 375 F. Supp. 2d at 291.

        As a final matter, the Court reviews Pacific Life's contention that Dr. Patel "pleads no facts as to why the purported misrepresentations were fraudulent at the time they were made."  (Pac. Life Mot. to Dismiss at 11.) As an initial matter, the alleged representations made to Dr. Patel that the Court finds specific enough to satisfy the "what" requirement of pleading fraud with particularity are identified in paragraphs 37 through 39 of Plaintiffs First Amended Complaint.   These alleged misrepresentations are as follows:

   • "Cushner . . . promised and represented to Dr. Patel that such a plan would provide . . . federal income tax deductions for the Patel P.A. related to its insurance premiums paid to Pacific Life in connection with the Patel DBP" (Compl. ¶ 37)[6] ;

   • "Cushner promised Dr. Patel that he would receive large, tax-free returns from the 412(i) plan" (Compl. ¶ 37);

   • "Cushner . . . misrepresented to Dr. Patel that Section 412(i) plans, like the Patel DBP, could be wholly funded through life insurance policies under applicable law, including Section 412(i) of the Internal Revenue Code" (Compl. ¶ 39); and

---

        [6] Although paragraph 37 also states that Cushner represented that the defined benefit plan would provide "certain retirement benefits," the alleged retirement benefits are not specifically identified. Accordingly, the Court concludes this statement is not plead with the requisite particularity.

21

• "Cushner also represented to Dr. Patel that the Patel DBP, including the insurance policies used to fund it, was appropriate and legally permissible under applicable law, including Section 412(i)." (Compl. ¶ 39).

Additionally, the Court determines that the following alleged misrepresentations are specific enough to satisfy the "what" requirement under Rule 9(b): "[t]hat the Patel Policy involved a permissible death benefit under the Patel DBP" (Compl. ¶ 73(c)), and "[t]hat the Patel Policy had an appropriate and permissible surrender charge." (Compl. ¶ 73(f).)

First, there is no explanation as to why these statement were false in or around May 2003, when Dr. Patel allegedly established the Plan in reliance on these representations. (Compl. ¶ 38.)[7] Although Plaintiffs generally allege that the IRS was scrutinizing 412(i) plans funded by insurance policies in the early 2000s (Compl. ¶ 40), and that on January 31, 2003, senior Treasury and IRS officials gave a presentation at a benefits conference that the IRS would be giving "very high priority" to "abusive insurance-funded defined benefit plans" (*id.* ¶ 40), Plaintiffs fail to allege that prior to Dr. Patel's purchase of the Pacific Life policy in or around May 2003, the IRS had made any definitive statement about the legality of a 412(i) plan funded with that type of Pacific Life (or even a similar competitor's) policy. To the contrary, in fact, Plaintiffs allege that in September 1999 the law firm of Bryan Cave LLP issued a legal opinion that funding the type of defined benefit plan being marketed to Plaintiffs with a life insurance policy issued by Indianapolis Life "or a substantially similar policy," "more likely than not" would satisfy section 412(i). (Compl. ¶ 27.)

Plaintiffs' citation to "early 2000's" IRS speeches "expressing concern" about the funding of

---

[7]Plaintiffs allege that they established the Patel DBP in May 2003. (Compl. ¶ 38.) While Plaintiffs do not specify when the alleged misrepresentations were made, Plaintiffs allege they purchased the plan based on the representations. Accordingly, the Court assumes the representations were made some time prior to May 2003.

defined benefit plans with insurance policies and the IRS's intent to examine 412(i) plans for misuse is ambiguous and insufficient to explain why any of these statements regarding the federal income tax ramifications of the plans were false when made in or around May 2003.  There is no explanation as to why the alleged representation that the Pacific Life policy provided a permissible death benefit under a 412(i) plan was false when made.  (Compl. ¶ 73(c).)  The only allegation regarding permissible death benefits relates to a 2004 IRS revenue ruling in which the IRS allegedly stated that the issuance of life insurance policies greatly in excess of the permissible death benefit under a 412(i) plan was a listed transaction that the IRS considers to be an abusive tax shelter.  (Compl. ¶ 47.) There are no allegations explaining why any pre-2004 statement about death benefits was false when made.  Similarly, with regard to the alleged misrepresentation "[t]hat the Patel Policy had an appropriate and permissible surrender charge" (Compl. ¶ 73(f)), there are no pre-2004 allegations explaining why, prior to the proposed IRS regulations directly addressing this issue in 2004 (*see* Compl. ¶ 46), this statement about surrender charges was false when made.

Overall, Plaintiffs appear to be attempting to use the ultimate rulings and rule making by the IRS in 2004-2005, which they allege resulted in the illegality of Dr. Patel's defined benefit plan under section 412(i), to retroactively demonstrate that representations made by Cushner as agent for Pacific Life were false when made in 2003.  That leap of logic fails to explain why each representation was false when made, particularly in light of a legal opinion to the contrary.  Alleging that, on information and belief, Pacific Life "received warnings" about the tax risks of the defined benefit plan being marketed by Hartstein/ECI and funded with Pacific Life policies and knew of IRS scrutiny of this type of 412(i) plan in the early 2000s (Compl. ¶ 33) is not the same as alleging that the plan and policy used to find it were illegal when sold to Dr. Patel in May 2003, or that any

23

specific representation allegedly made was false at any time prior to 2004, much less when it was made.[8]

Having determined that Plaintiffs' fraud allegations fail to satisfy Rule 9(b), the Court turns to Pacific Life's argument that the fraud claims tethered to the foregoing misrepresentations should be dismissed on the merits. With respect to the substantive merits of the fraud allegations, Plaintiff must allege: (1) Pacific Life made a material misrepresentation (false representation or nondisclosure under certain circumstances); (2) with knowledge of its falsity; (3) intending to induce reliance; (4) Plaintiffs in fact justifiably relied on the misrepresentation; and (5) Plaintiffs were damaged as a result. *Ins. Co. of North Am. v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998).

To the extent that Plaintiffs are alleging that any of the statements listed in paragraphs 37 through 39, or 73 are forward-looking or are opinions as to how the IRS would treat 412(i) plans at any time after Dr. Patel funded the Patel DBP with a Pacific Life insurance policy in 2003, the Court finds those opinions as to future events non-actionable as the basis for a fraud claim under these circumstances. Each statement allegedly made by Cushner is a statement regarding federal income tax law or policy, including the policies of a third party government agency--the IRS. As a matter of law, any representation or prediction by any alleged Pacific Life agent as to how the IRS would treat the 412(i) plans, and the funding thereof, in the future is either an non-actionable opinion or was unjustifiably relied upon. *See Bryant v. Transcon. Gas Pipe Line Corp.,* 821 S.W.2d 187, 190

---

[8]Plaintiffs' fraud allegations based on omissions is premised on the affirmative representations made by Cushner (*see* Compl. ¶ 37), which Plaintiffs allege were false or created a false impression because Cushner failed to disclose the risks of the plan he was recommending. Because Plaintiffs' allegations pertaining to affirmative statements are not well pled under Rule 9(b) (*see supra*), the allegations pertaining to fraud by omission suffer from the same defects, and must similarly be dismissed pursuant to Rule 9(b).

(Tex. App. – Houston 1991, writ denied) (opinions, misrepresentations of law and predictions of future events are not actionable under Texas law); *Duperier v. Texas State Bank,* 28 S.W.3d 740, 749 (Tex. App.--Corpus Christi 2000, rev. dismissed) (investment advisor's representations that future resetting of interest rate on notes was unlikely is non-actionable opinion); *see also Borba v. Thomas*, 138 Cal. Rptr. 565, 570 (Cal. App. 1977) (finding no reasonable reliance upon a statement that a government agency would approve the parties' contract, as there is no right to rely on the representation of the "future conduct of public officials"); *Williams v. Sidley, Austin, Brown & Wood, LLP,* 2006 WL 684599, at *5 (N.Y. Super. Ct. 2006) ("The alleged misrepresentations regarding the purported safety and viability of the Coastal III Fund as a tax sheltered investment fall within the category of predictions or expressions of future events, which are neither affirmations of events that when made, the defendants knew or could have known would not occur, nor assertions of present facts that were exclusively within the defendants' knowledge.").[9]

Further, the allegation that Cushner told Dr. Patel that "he would receive large, tax-free returns from this arrangement" is also an non-actionable opinion of future performance by the IRS. (Compl. ¶ 37). As alleged, the "tax-free returns" happen, usually after "five to seven years" or in any event after the 412(i) plan participant buys the insurance policy from the trust holding it. (Compl. ¶ 22). Again, Pacific Life and Cushner are not alleged to be specially situated to predict future tax treatment by the IRS, nor would it be reasonable for Plaintiffs to rely on such a projection. There

---

[9]Further, the Court rejects Plaintiffs' argument that Cushner's alleged representations, rather than being opinions or predictions, should be characterized as "statements of past facts." (*See* Pl. Resp. to Pac. Life Mot. to Dismiss at 14.) As Pacific Life correctly argues, Plaintiffs fail to explain how or why "[Pacific Life] intended Patel to understand its representations regarding the tax benefits of his 412(i) plan to be ones of fact, not opinion, and [Pacific Life] understood them as such." (Pac. Life Reply at 12.)

is no allegation that Pacific Life or any of its agents had any special knowledge or ability to control the IRS's enactment or enforcement of its policies related to section 412(i).

In addition to the affirmative representations discussed above, Plaintiffs also allege fraud by non-disclosure based on Pacific Life's alleged failure to disclose the risks associated with the defined benefit plans funded by its life insurance policies, the potentially abusive nature of the plans, and that the IRS would likely not recognize the purported tax benefits of the plans.  (Compl. ¶ 37). Pacific Life's motion to dismiss the fraud by omission claim on the merits is premised solely on its argument that Dr. Patel could not have justifiably relied on Cushner's purported "misrepresentations and omissions" in light of the information Pacific Life provided to him in the "transaction documents."  (*See* Pac. Life Mot. to Dismiss at 13-16 (citing the "Illustration" attached to its motion to dismiss at "Ex. B").)  As already set forth above in connection with the Court's decision to grant Plaintiffs' Motion to Strike Exhibits (*see supra* at 10-12), the unsigned, undated "Illustration" is not properly considered on a motion to dismiss.  Moreover, Pacific Life has abandoned its argument that it is entitled to judgment as a matter of law at this juncture on the basis of the purported disclaimers. *See supra* note 4.  Absent reliance on purported disclaimers, Pacific Life has not provided the Court with any other argument in support of dismissing Plaintiffs' fraud claim on the merits insofar as Plaintiffs allege fraud by omission.

Based on the foregoing, Pacific Life's Motion to Dismiss Count Three is GRANTED for failure to plead fraud with the requisite particularity under Rule 9(b).  With regard to Pacific Life's Motion to Dismiss Count Three on the merits, the motion is GRANTED insofar as Plaintiffs allege fraud based on affirmative misrepresentations, but not fraud based on omissions.

26

ii.      Civil Conspiracy (Count Six)

Civil conspiracy is defined as "a combination of two or more persons [acting] to accomplish an unlawful purpose, or accomplish a lawful purpose by unlawful means[.]" *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). However, civil conspiracy is frequently referred to as a "derivative tort" because "a defendant's liability for conspiracy depends on participation in some underlying tort." *Id.* The Court having granted Pacific Life's motion to dismiss as to Plaintiffs' fraud claim, no underlying tort exists on which to base conspirator liability. *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997)(granting summary judgment on conspiracy claim noting that "allegations of conspiracy are not actionable absent an underlying [tort]"); *Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997) (noting that "because the fraud claim fails[,] the fraud based conspiracy claim must fail also"). Accordingly, the Court GRANTS Pacific Life's Motion to Dismiss Count 6 for lack of an underlying tort on which to base liability.

Additionally, the Court will address Pacific Life's alternative argument in support of its motion to dismiss Count Six, namely that Plaintiffs have failed to adequately plead a conspiracy claim. (*See* Pac. Life Mot. to Dismiss at 22.) Pacific Life, in support of its motion to dismiss, contends: "Dr. Patel has seasoned counsel who have not failed to recite the legal elements of a conspiracy: that defendants devised a scheme, had a meeting of the minds with an unlawful objective, committed an overt act, all or which proximately caused damages to unwitting plaintiffs. What Dr. Patel fails to allege is anything *other* than that perfunctory recitation of legal elements." (Pac. Life Reply at 2 (original emphasis).) In response, Plaintiffs argue that they have satisfied the pleading requirements under Rule 8, that Pacific Life is inappropriately imposing Rule 9 pleading requirements on a civil conspiracy claim, and that *Twombly* does not alter notice pleading. (Pl. Resp.

27

at 15-18.)

    To state a claim for conspiracy under Texas law, Plaintiffs must allege facts to support each

of the following elements: (1) Pacific Life was a member of a combination of two or more persons;

(2) the object of the combination was either to accomplish an unlawful purpose or to accomplish a

lawful purpose by unlawful means; (3) the members of the combination had a meeting of the minds

on the object or course of action; (4) one of the member committed an unlawful, overt act to further

the object or course of action; and (5) Plaintiffs suffered injuries as a proximate result of the wrongful

acts. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).

    Plaintiffs allege that "[t]ogether Cushner, [Hartstein/ECI], the Bryan Cave Defendants, and

Pacific Life conspired to develop, market, sale (sic), and maintain defined benefit plans to individuals

like Dr. Patel that had an unacceptably high risk of being unqualified pursuant to Internal Revenue

Code Section 412(i) and disallowed by the IRS." (Compl. ¶ 94.)  Plaintiffs further allege that, on

information and belief, all Defendants "agreed to join in a conspiracy related to the marketing and

sale of life insurance policies for defined benefit pension plans seemingly in compliance with Section

412(i) of the Internal Revenue Code." (*Id.* at ¶ 95.)  Plaintiffs also allege on information and belief

that all Defendants "knew that the object of this conspiracy was (1) to market and sell defined

pension benefit plans, such as the Patel DBP, and (2) to market and sell life insurance policies that

were not appropriate or legally permissible for such plans."  (*Id.* at ¶ 96.)   Plaintiffs allege on

information and belief that Defendants "knew that this object was both unlawful and would be

accomplished by unlawful means, such as fraud and other misrepresentations." (*Id.*) Plaintiffs further

allege that Defendants, on information and belief, "had a meeting of the minds on the object of or

course of action for this conspiracy," "committed multiple unlawful and overt acts to further the

28

object or course of action for [the] conspiracy," and that these "unlawful acts proximately caused the damages suffered by Plaintiffs." (*Id.* at ¶¶ 97-99.)

As already stated (*see supra*), to survive a Rule 12(b)(6) motion, the complaint must contain plausible grounds to show entitlement to relief, not just "labels and conclusions." *Twombly*, 550 U.S. at 555. Having carefully considered the First Amended Complaint, the parties' arguments and applicable law, the court determines that Plaintiffs have failed to plead a viable claim for conspiracy under Rule 8(a) and *Twombly*. The only remotely specific allegation of an agreement between Pacific Life and any other Defendant is the allegation that "[a]rmed with the Bryan Cave Opinion (and all its defects), the Consultant Defendants proceeded to work together with Pacific Life to further develop and market this purported 412(i) arrangement, including the specially designed insurance policies used to fund such an arrangement." (Compl. ¶ 29.) Mindful that the conspiracy being pled is a conspiracy to commit fraud, the Court finds no factual support for the element that Pacific Life had a meeting of the minds with any other Defendant to do anything in furtherance of committing fraud. *See generally Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) (affirming 12(b)(6) dismissal finding that a complaint alleging that coaches "encouraged and/or allowed" a student's behavior did not allege specific facts to show an agreement as to that behavior between the coach and the student). This allegation is insufficient to support a conspiracy between Pacific Life and Hartstein/ECI or the Bryan Cave Defendants, as it fails to provide a factual background to allow an understanding of how "work[ing] together" is equivalent to a conspiracy to defraud.

Further, in *Twombly*, the Supreme Court noted that but for the parallel conduct allegations, it doubted that the complaint met the Rule 8 notice requirements as it lacked mention of "specific

time, place, or person involved in the alleged conspiracy." 550 U.S. at 565 n. 10.  The only reference in the instant Complaint to the alleged time frame in which Defendants conspired is the legally insufficient "in the late 1990s."(Compl. ¶14.)  A period of several years is not definitive enough in the context of the conspiracy claim as alleged to put any defendant on sufficient notice to be able to defend.  The conspiracy claim identifies no specific time or place in which any meeting of the minds took place.  In short, the Court determines that Plaintiffs have not pled the factual specificity to push their claim above the speculative level from conceivable to plausible. *Twombly*, 550 U.S. at 570; *Love Terminal Partners, LP v. City of Dallas, Texas*, 527 F. Supp.2d 538, 554 (N.D. Tex. 2007) (dismissing conspiracy claim in antitrust case under 12(b)(6) for insufficient factual pleading where allegations included that the parties "were already secretly discussing," "Defendants had the parameters of their illegal combination in place," and "Defendants had agreed the [object of their conspiracy] should be destroyed.").  As such, Pacific Life's Motion to Dismiss is GRANTED for lack of an underlying tort and for failure to adequately allege a conspiracy claim under Rule 8(a) and *Twombly*.

### iii.    Negligent Misrepresentation (Count Two)

Pacific Life argues that Plaintiffs' claim for negligent misrepresentation should be dismissed for failing to satisfy Rule 9(b), as well as on the merits. (Pac. Life Mot. to Dismiss at 12-17.) Plaintiffs oppose for the same reasons discussed and evaluated by the Court in connection with the fraud claim.  Additionally, however, Plaintiffs argue that their negligent misrepresentation claim is not subject to the heightened particularity pleading standard of Rule 9(b). (Pl. Resp. to Pac. Life Mot. at 9-10.)  The Court disagrees.  Relying on an unpublished Fifth Circuit opinion, *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662 (5th Cir.2004), and a

30

subsequent opinion from this court, *American Realty Trust, Inc. v. Travelers Cas. & Surety Co. of Am.*, 362 F. Supp.2d 744 (N.D. Tex. 2005) (Godbey, J.), Plaintiffs argue that they should not have to plead with particularity because their negligence and fraud claims are not intertwined. This argument misinterprets those cases and ignores the reality of the Complaint. Plaintiffs have effectively pled negligent misrepresentation as a lesser-included offense to their fraud claims. Although they correctly point out that they have labeled the claims separately as two different counts in the Complaint, the factual allegations underlying the claims are verbatim. (*Compare* Compl. ¶ 67 to ¶ 73.) Under those circumstances, "when the parties have not urged a separate focus on the negligent misrepresentation claims," the Fifth Circuit has found negligent misrepresentations claims subject to Rule 9(b) in the same manner as fraud claims. *Benchmark Elec.*, 343 F.3d at 723 (evaluating negligent misrepresentation in the same manner as fraud in part because both were "based on the same set of alleged facts"); *see also Biliouris v. Sundance Res., Inc.*, 559 F. Supp.2d 733, 737 (N.D. Tex. 2008) (dismissing negligent misrepresentation claim that was based on the same operative facts as an insufficient fraud claim); *Kougl v. Xspedius Mgmt. Co.*, 2005 WL 1421446, at * 5-6 (N.D. Tex. Jun. 1, 2005) (dismissing negligent misrepresentation claim that restated the same factual basis as a fraud claim for failure to satisfy Rule 9(b)). Plaintiffs' negligent misrepresentation claim fails to satisfy Rule 9(b) to the same extent and for the same reasons as Plaintiffs' fraud claim discussed above. Accordingly, Pacific Life's Motion to Dismiss Count Two is GRANTED for failure to satisfy Rule 9(b).

Pacific Life also moves to dismiss Count Two on the merits for the same reasons as its motion to dismiss Plaintiffs' fraud claims on the merits, namely (1) disclaimers of reliance in this case preclude Plaintiffs from alleging reliance on any representations and/or omissions regarding the tax

or legal consequences of the Patel DBP (Pac. Life Mot. to Dismiss at 13-16), and (2) to the extent

each misrepresentation Dr. Patel purports to ascribe to Mr. Cushner was either an "opinion of law

or a prediction of future events[,]" such misrepresentations are "not actionable as a matter of law."

(*Id.* at 16.)

> Pursuant to Texas law, the elements of a cause of action for negligent misrepresentation are:
>
> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Clardy Mfg. Co. v. Marine Midland Business Loans, Inc.*, 88 F.3d 347, 357 (5th Cir. 1996) (quoting

*Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).  A cause of action for

negligent misrepresentation requires the Defendant to misstate an existing fact.  *Clardy Mfg. Co.*,

88 F.3d at 357; *5636 Alpha Rd. v. NCNB Tex. Nat'l Bank*, 879 F. Supp. 655 (N.D. Tex. 1995)

(Fitzwater, J.).  Negligent misrepresentation does not occur when the speaker is merely speculating

as to a future event.  *Clardy Mfg. Co.*, 88 F.3d at 357.

The Court rejects Pacific Life's first argument in support of dismissal on the merits.  Pacific

Life, relying on exhibits submitted with its motion to dismiss, argues that disclaimers of reliance in

this case preclude Plaintiffs from alleging reliance on any representations and/or omissions regarding

the tax or legal consequences of the Patel DBP.  (Pac. Life Mot. to Dismiss at 13-16.)  In light of the

Court's decision above to grant Plaintiffs' Motion to Strike these exhibits as inappropriate on a

motion to dismiss (*see supra* at 10-12), and Pacific Life's abandonment of this argument following Dr.

Patel's affidavit testimony that he did not sign the document attached as Exhibit C to the motion

32

to dismiss (*see supra* note 4), Pacific Life's argument that it is entitled to judgment as a matter of law on Count Two based on disclaimers of reliance is untenable.

The Court agrees, however, with Pacific Life's second argument in support of its motion to dismiss on the merits. A cause of action for negligent misrepresentation requires the defendant to misstate an existing fact. *Clardy Mfg.*, 88 F.3d at 357. Negligent misrepresentation does not occur when the speaker is merely speculating as to a future event. *See id.* As detailed above with regard to Plaintiffs' fraud claim, the representations allegedly made by Cushner were either non-actionable predictions of future events or non-actionable expressions of opinion regarding what the IRS would do. Accordingly, Pacific Life's motion to dismiss Count Two is GRANTED on this ground as well.

### d.    Plaintiffs' Statutory Claims

To reiterate, Plaintiffs have also sued Pacific Life for violations of Article 21.21 of the Texas Insurance Code, now codified as Texas Insurance Code Chapter 541 (Count One), and violations of California Business and Professions Code section 17200, *et seq.* (Counts Four and Five). The Court will now address Pacific Life's motion to dismiss these statutory claims.

### i.    Violations of Texas Insurance Code Chapter 541 (Count One)

Plaintiffs allege that Pacific Life, by engaging in the acts and practices detailed above, violated Texas Insurance Code Chapter 541 (Compl. ¶¶ 57-65.)[10] Pacific Life contends that Count One should be dismissed because: (1) Plaintiffs have failed to satisfy the pleading requirements of Rule 9(b); (2) it is premised solely on violations of the Texas DTPA, under which Plaintiffs cannot recover because the total consideration involved exceeds the maximum dollar limit on transactions

---

[10]Although Plaintiffs in their original complaint alleged violations of the Texas Deceptive Trade Practices Act, Plaintiffs have dropped this claim in their First Amended Complaint.

governed thereby; and (3) Dr. Patel cannot allege reasonable reliance on any alleged misrepresentations and omissions in light of the disclaimers of reliance.  (Pac. Life Mot. to Dismiss at 12, 18-19; Pac. Life Reply at 14.)

The Court agrees with Pacific Life that Count One should be dismissed for the same reasons as Plaintiffs' fraud claim analyzed above, namely, failure to plead fraud with the requisite particularity under Rule 9(b).  *See generally Frith v. Guardian Life Ins. Co. of America*, 9 F. Supp. 2d 734, 741-43 (S.D. Tex. 1998) (dismissing fraud-based Texas Insurance Code claim for failure to comply with Rule 9(b)).  As Pacific Life correctly points out, Count One is based, verbatim, on the same six alleged "misrepresentations, omissions or misleading statements" and four alleged "fail[ures] to disclose" as the fraud count.  (Pac. Life Mot. to Dismiss at 12.)  Accordingly, for the reasons already discussed with regard to Count Three (*see supra*), Pacific Life's Motion to Dismiss Count One for failure to plead with requisite particularity under Rule 9(b) is GRANTED.

With regard to the merits of Count One, however, the Court rejects Pacific Life's argument that Count One should be dismissed because it is premised solely on violations of the Texas DTPA, under which Plaintiffs cannot recover because the total consideration involved exceeds the maximum dollar limit on transactions governed thereby.  (Pac. Life Reply at 14.)  First, whether the total consideration contemplated exceeds $500,000 is more appropriately considered in the context of summary judgment.  Moreover, Count One does not appear to be premised solely on violations of the Texas DTPA (incorporated into the Insurance Code at § 541.151(2)), but also based on Tex. Ins. Code § 541.151(1) and § 541.051.  (*See generally* Compl. ¶¶ 57-65.)

Further, the Court rejects Pacific Life's argument that the transaction documents submitted in its appendix preclude reliance.  As the Court concluded above in granting Plaintiffs' Motion to

34

Strike, Exhibit B (the unsigned and undated Illustration) and Exhibit C (the purported disclaimer) are not properly before the Court on a motion to dismiss. *See supra* at 10-12. Moreover, as already stated, Pacific Life has abandoned this argument to the extent Dr. Patel testifies that he did not sign Exhibit C. *See supra* note 4. Further, as Plaintiffs correctly argue, proof of "justifiable reliance" is not required to recover under Section 541.151(1) of the Texas Insurance Code; rather, Plaintiffs must show detrimental reliance on Pacific Life's alleged misrepresentations, regardless of whether the reliance was justifiable. *See* Tex. Ins. Code § 541.151(1) and (2).

### ii. Violations of California Business and Professions Code section 17200 (Unlawful Business Acts – Count Four) (Fraudulent Business Acts – Count Five)

In Counts Four and Five, Plaintiffs allege that Pacific Life violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, which provides a remedy for any injuries resulting from unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice." "Under its 'unlawful' prong, the UCL borrows violations of other laws and makes those unlawful practices actionable under the UCL." *See Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 185 (Cal. Ct. App. 2007) (internal quotation mark and citation omitted). Plaintiffs' statutory claims for violations of § 17200 are predicated on alleged violations of California's Consumer Legal Remedies Act ("CLRA") (§ 1770) and California's False Advertising Law ("FAL") (§ 17500).

Pacific Life argues that, as a threshold matter, the Complaint fails to state a § 17200 claim for alleged violations of the UCL because the "insurance transaction complained of did not take place in California." (Pac. Life Mot. to Dismiss at 19.) According to Pacific Life, Dr. Patel, a Texas resident, who purchased an insurance contract through a Texas broker, cannot pursue a claim for

violations of California's Unfair Competition Law.   (*Id.* at 19-20; Pac. Life Reply at 12-13.)   In response, Plaintiffs contend that the UCL applies in this instance because Pacific Life has its principal place of business in California.   (Pl. Resp. at 18.)

In *Norwest Mortgage, Inc. v. Superior Court*, 85 Cal. Rptr. 2d 18 (Cal. Ct. App. 1999), which both parties cite, the California appellate court had occasion to consider the force and operation of the California Unfair Competition Law outside the state's boundaries.   The court dismissed UCL claims where the facts demonstrated that non-Californians were injured "by conduct occurring wholly outside of California's borders by actors headquartered and operating outside of California." *Id.* at 25-26.   In holding that the UCL did not extend to the non-California plaintiffs' claims, the court noted that, although technically "California is Norwest Mortgage's state of incorporation," Norwest Mortgage's "headquarters and principal place of business" were in another state, and thus the "injury-producing conduct occurred [. . .] outside of California." *Id.* at 26; *contrast State of Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1311 (S.D. Fla. 2005) (holding that Florida resident may assert UCL claim where defendant Tenet Healthcare's executive headquarters were in Santa Barbara, California, and plaintiffs alleged conduct occurring in California).   Here, Plaintiffs have specifically alleged that Pacific Life "developed, structured, promoted, recommended, and marketed" the insurance policy in question, and has its "principal place of business at 700 Newport Center Drive, Newport Beach, California."   (*See* Compl. ¶ 6.)   Given these allegations, and in light of applicable law, the Court rejects Pacific Life's argument that, as a matter of law, the UCL does not apply to Plaintiffs' claims herein.   The Court will now consider Pacific Life's arguments in support of its motion to dismiss Plaintiffs' § 17200 claims based on violations of California's CLRA (§ 1770) and False Advertising Law (§ 17500).

36

*The CLRA Claims*

Pacific Life argues that Plaintiffs' CLRA claims should be dismissed because insurance is not a "good" or "service" as those terms are defined under Cal. Civ. Code § 1770(a).  (Pac. Life Mot. to Dismiss at 20-21.)  Plaintiffs argue otherwise.  (Pl. Resp. at 20-21.)  Claims for violations of the CLRA are limited to transactions "intended to result or which result[s] in the sale or lease of goods or services to any consumer."  Cal. Civil Code § 1770(a).  After the parties submitted briefing on this issue, the California Supreme Court, affirming the lower court's decision, held that insurance policies are neither goods nor services under the CLRA.  *Fairbanks v. Superior Court*, 205 P.3d 201, __, 2009 WL 1035264, at *2 (Cal. Apr. 20, 2009).  Accordingly, to the extent Plaintiffs' § 17200 claim is based on a violation of the CLRA, Pacific Life's Motion to Dismiss Count Four is GRANTED.[11]

*The FAL Claims*

In support of its motion to dismiss Plaintiffs' § 17200 claims based on California's False Advertising Law, Pacific Life argues that Dr. Patel has not alleged that he lost money or property as a result of his purchase of an insurance contract.  (Pac. Life Mot. to Dismiss at 20-21.)  In response, Plaintiffs contend that they have alleged that the IRS audits "resulted in substantial audit-related fees and expenses."  (Pl. Resp. at 19.)  Claims for violations of the UCL require allegations that the plaintiff "has suffered injury in fact and has lost money or property as a result of such unfair competition."  *See* Cal. Bus. & Prof. Code § 17204.  Paragraph 54 of Plaintiffs' First Amended Complaint states that the IRS audits have "resulted in substantial audit-related fees and expenses."  (*See* Compl. ¶ 54.)  Thus, the Court rejects Pacific Life's contention that Plaintiffs have failed to

---

[11]The *Fairbanks* decision obviates the need for the Court to consider Pacific Life's other arguments in support of dismissal of Plaintiffs' § 17200 claim based on violations of the CLRA.

allege that they lost "money or property."

Pacific Life also argues that the FAL claim should be dismissed because Dr. Patel has not alleged "facts showing that he (or the public at large) was deceived by any advertisement made by Pacific Life." (Pac. Life Mot. to Dismiss at 20-21.) Plaintiffs argue that the FAL allegations are sufficient under Rule 8(a). (Pl. Resp. at 20.) To state a claim under the FAL, one must show that "members of the public are likely to be deceived." *Bank of the West v. Super. Ct.*, 833 P.2d 545, 553 (Cal. 1992). Although this claim is subject to Rule 8, not Rule 9, the Court determines that the First Amended Complaint fails to provide facts to support a "short and plain statement of the claim." This is particularly so because the First Amended Complaint fails even to allege this required element of a false advertising claim. As such, to the extent Plaintiffs' § 17200 claim is based on a violation of the FAL, Pacific Life's Motion to Dismiss Count Four is GRANTED.

With regard to Count Five, alleging a violation of Cal. Bus. & Prof. Code § 17200 for fraudulent business acts and practices under the CLRA and FAL, Pacific Life's Motion to Dismiss is GRANTED for the reasons articulated above regarding dismissal of Count Four, as well as for failure to satisfy Fed. R. Civ. P. 9(b). As Pacific Life correctly argues, because Count Five is a section 17200 claim based on a "fraudulent business act or practice," that claim must be alleged with particularity in accordance with Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-1105 (9th Cir. 2003). For the reasons stated above with respect to Count Three (the fraud claim), the Court concludes that Count Five has not been stated with sufficient particularity and must similarly be dismissed pursuant to Rule 9(b).

## C.    Bryan Cave LLP's and Richard C. Smith's Motion to Dismiss

As already stated, Plaintiffs assert the following causes of action against the Bryan Cave

38

Defendants: common law fraud (Count Three); civil conspiracy (Count Six); negligent misrepresentation (Count Seven); aiding and abetting common law fraud (Count Eight); breach of fiduciary duty (Count Nine); and professional negligence/malpractice (Count Ten). The Bryan Cave Defendants move to dismiss, as a threshold matter, for lack of *in personam* jurisdiction under Fed. R. Civ. P. 12(b)(2). Alternatively, they move to dismiss for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6) and failure to plead fraud with requisite particularity under Fed. R. Civ. P. 9(b). The Court first addresses the Bryan Cave Defendants' argument that this Court lacks personal jurisdiction over them.

### 1. Legal Standard for Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a *prima facie* case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a *prima facie* case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his *prima facie* case, the burden then shifts to the defendant to present "a compelling case that

39

the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are

directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). A court must consider each of plaintiff's claims individually when determining whether specific jurisdiction over a defendant exists. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 231 (Tex. 1991)).

2.    **Analysis**

In support of their Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction, the

41

Bryan Cave Defendants contend: (1) Plaintiffs concede in the First Amended Complaint that this Court lacks general jurisdiction over them; and (2) the affidavit of Richard C. Smith (*see* Ex. 1 to Bryan Cave Appendix) (doc. 47), "conclusively demonstrates that Bryan Cave did not purposefully direct any activities to Texas in connection with the establishment of the Patel Plan, and has never communicated with Plaintiffs." (Bryan Cave Mot. to Dismiss at 5. ) The Bryan Cave Defendants also argue that Plaintiffs' counsel have filed briefs and made arguments in a case involving nearly identical factual allegations, and pending before this Court (*Berry, et al. v. Indianapolis Life, et al.*, 3:08-CV-248) ("*Berry*"), explicitly informing this Court and the Multi-District Litigation ("MDL") panel that the Bryan Cave Defendants are not subject to *in personam* jurisdiction in a Texas court. (*See id.* at 9 and Ex. 3 thereto at 24 (quoting Plaintiffs' Motion to Transfer Venue) ("Plaintiffs' counsel examined the jurisdictional facts relating to Bryan Cave LLP and Richard Smith and learned that they are not amendable to jurisdiction in Texas"); *see also id.* at 10 and Ex. 4 thereto at 69-70 (quoting Transcript from September 25, 2008 oral argument before MDL panel regarding whether this Court or District of Arizona court should preside over the MDL relating to promotion of the 412(i) plans) ("We will be suing Bryan Cave and Richard Smith but not in Texas. There's no general jurisdiction, nor is there specific jurisdiction over him in Texas . . . So we are going to file a lawsuit in Arizona against Bryan Cave and Richard Smith.").)

In response to the Bryan Cave Defendants' motion to dismiss for lack of personal jurisdiction, Plaintiffs contend that the allegations in the First Amended Complaint are sufficient to make a *prima facie* showing that the Bryan Cave Defendants' contacts with the State of Texas support the exercise of specific jurisdiction over them such that they could reasonably anticipate being haled into a Texas court. Additionally, Plaintiffs argue that, based on recent events following the filing of the First

Amended Complaint, the Court can now exercise general jurisdiction over the Bryan Cave Defendants. Plaintiffs also argue that this Court should ignore statements made by their attorneys in *Berry* regarding this Court's lack of jurisdiction over the Bryan Cave Defendants, as Plaintiffs allege an attorney-client relationship in this case, but not in *Berry*. (*See* Pl. Resp. to Bryan Cave Mot. at 2-11.)

The Court will first address whether Plaintiffs have made a *prima facie* showing that the Bryan Cave Defendants have sufficient contacts with the State of Texas to support the exercise of specific jurisdiction, followed by an analysis of whether recent events can be used by Plaintiffs to alter their concession in the First Amended Complaint that this Court lacks general jurisdiction.

*Specific Jurisdiction*

In the First Amended Complaint, Plaintiffs allege that the Court has personal jurisdiction over the Bryan Cave Defendants based "wholly from its representation of these Texas-based Plaintiffs with respect to the establishment of Plaintiffs' defined benefit plan in this matter." (*See* Compl. ¶ 2.) Plaintiffs, in response to the Bryan Cave Defendants' Rule 12(b)(2) motion, contend that "the uncontroverted allegations in the First Amended Complaint, which the Court must accept as true, establish specific jurisdiction over the Bryan Cave Defendants." (Pl. Resp. to Bryan Cave Mot. at 2.) These allegations are: "[t]he Bryan Cave Defendants assisted in the design, development, and marketing of the Pendulum Plan by providing various legal opinions [including the Bryan Cave Opinion,] that was deliberately vague, made unsupported legal conclusions, and also consciously ignored the tax and legal implications of the Pendulum Plan"; the Bryan Cave Defendants understood and intended that the Bryan Cave Opinion would be used to market the Pendulum Plan; Dr. Patel relied on the Bryan Cave Opinion when he established the Patel DBP;

43

"the Bryan Cave Defendants formed an attorney-client relationship with Patel related to the Patel DBP"; "the Bryan Cave Defendants drafted Patel's plan documents and took other action as Patel's attorneys in connection with the sale, adoption and implementation of the Patel DBP"; and "the Bryan Cave Defendants received substantial fees in connection with this engagement." (*Id.* at 4-5.) In further support of the minimum contacts necessary to establish specific jurisdiction, Plaintiffs point to their allegations regarding the Bryan Cave March 16, 2004 memorandum to Hartstein/ECI regarding the IRS's requirement that employers sponsoring Rule 412(i) plans might be required to file a Form 8886, along with its related advice that filing such a form could lead to heightened IRS scrutiny, and that employers should not file such forms, but should amend their tax returns instead. (*Id.* at 5.) "The Bryan Cave Defendants knew that the March 16 memorandum would be distributed to employers with 412(i) plans like Patel, and that Patel would rely on the memorandum and not file Form 8886 with the IRS." (*Id.*) Based on these allegations, Plaintiffs argue that "[w]hen the Bryan Cave Defendants engaged in the foregoing conduct, they took affirmative action, the effect of which was to cause foreseeable business activity (or lack thereof) by Patel (citizens and residents of Texas) related to the Patel DBP, which was a Texas 412(i) plan. Thus Patel has presented a prima facie case of specific jurisdiction." (*Id.* at 6.)

The Bryan Cave Defendants have submitted the affidavit of Richard C. Smith in support of their motion to dismiss. (Doc. 47). Smith testifies in his affidavit that Bryan Cave LLP has its principal place of business in St. Louis, Missouri and has no offices in Texas. (Bryan Cave App. at Ex. 1 ¶ 4.) Since 1996, Smith has been a partner at Bryan Cave LLP. (*Id.* at ¶ 3.) Smith has never maintained an office or worked in Texas, is not licensed to practice law in Texas, and has never held any other professional licenses in Texas. (*Id.* at ¶¶ 9-11.) Smith has never solicited clients or

44

advertised his services in Texas. (*Id.* at ¶¶ 12-13.)  Smith was the attorney at Bryan Cave who represented Hartstein/ECI in connection with the Pendulum Plan.  (*Id.* at ¶¶ 15-16.)   In that capacity, Smith prepared documentation for numerous plan participants, including Plaintiffs.  (*Id.* at ¶ 15.)  Smith testifies he never traveled to Texas to meet with Plaintiffs, never sent materials to Plaintiffs in Texas and never communicated orally or in writing with Plaintiffs in Texas or anywhere else.  (*Id.* at ¶ 18.)  Smith testifies he has not entered into any contract or retainer agreement to provide Plaintiffs with any services in Texas, or anywhere else.  (*Id.* at ¶ 19.)  He has not received fees from Plaintiffs or anyone else in Texas in connection with his preparation of documents for the Patel DBP or other Pendulum Plans.  (*Id.* at ¶ 20.)

The Court must accept as true Plaintiffs' allegation of an attorney-client relationship with the Bryan Cave Defendants (albeit via a third party).[12]  "The bare existence of an attorney-client relationship is not sufficient" to establish minimum contacts.  *Trinity Indus., Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 230 (5th Cir. 1995).  Plaintiffs contend that this case has something more, namely, purposeful availment by the Bryan Cave Defendants based on misrepresentations and omissions directed at the State of Texas.  According to Plaintiffs, "[t]he Fifth Circuit has repeatedly held in similar factual contexts that an attorney-client relationship together with a nonresident attorney's misrepresentations and omissions directed toward Texas constitute sufficient contacts to confer personal jurisdiction over the attorney."  (Pl. Resp. to Bryan Cave Mot. at 7.)  The Court has examined the Fifth Circuit cases cited by Plaintiffs as having "similar factual contexts," and

---

[12]Specifically, Plaintiffs allege that "[u]pon information and belief, the Bryan Cave Defendants were retained by Plaintiffs via ECI and drafted the underlying plan documents for Plaintiffs' Pendulum Plan."  (Compl. ¶ 26.)

determines that those cases involve contacts directed at Texas by the nonresident attorney not present in this case. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (cited in Pl. Resp. at 7 and n. 31.)  In *Walk Haydel*, a Louisiana corporation sued a Chicago-based law firm for fraud, breach of contract and breach of fiduciary duty, arising out of the law firm's alleged failure to disclose a conflict of interest to the Louisiana corporation.  The Fifth Circuit reversed the district court, and determined that the Louisiana corporation had made out a *prima facie* case of minimum contacts with Louisiana sufficient to confer specific jurisdiction. The contacts considered relevant included a meeting in New Orleans, Louisiana between the nonresident attorney and the Louisiana corporation where the nonresident attorney allegedly failed to disclose the purported conflict of interest. *Id.*  With regard to the meeting, the court stated that "a single act by a nonresident defendant attorney directed at the forum state can support a finding of minimum contacts[.]"  *Id.*  The court also noted other Louisiana contacts including telephone calls, facsimiles and letters sent directly to the client in Texas by the nonresident attorney, none of which contained a disclosure of the conflict of interest.   The Fifth Circuit determined that this repeated communication between the nonresident attorney and the forum state, without disclosing the conflict, was "the purposeful direction of material omissions into Louisiana." *Id.* at 245.  As part of its analysis of the relevant contacts with the forum by the nonresident attorney, the court also noted that the nonresident attorney performed several tortious activities outside Louisiana that had foreseeable effects in the forum.  The court stated, however, that these activities, while they could be considered in combination with the above-described conduct, were "generally insufficient alone to confer jurisdiction." *Id.* (quoting *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999)).  In contrast, Plaintiffs herein solely allege misrepresentations and omissions by the Bryan

Cave Defendants made outside Texas that had foreseeable effects in the forum, namely, that Dr.

Patel alleges he relied on them in establishing the Patel DBP and not filing a Form 8886.  It is

undisputed that neither Richard Smith, nor any other Bryan Cave attorney, visited Texas in

connection with the Patel DBP, sent any documents directly to the client in Texas, or had any

contact whatsoever with Dr. Patel in Texas.  (*See* Bryan Cave App. at Ex. 1 ¶¶ 15-20.)  Absent

more, under *Walk Haydel*, relied upon by Plaintiffs, the Bryan Cave Defendants cannot be said to

have purposefully directed [their] activities at the forum state [or] that the litigation results from

alleged injuries that arise out of or relate to these activities." *Walk Haydel*, 517 F.3d at 243 (citation

omitted).

In *Wein Air*, also relied upon by Plaintiffs as factually similar (*see* Pl. Resp. at 7 and n. 31),

a Texas client sued its German attorney for fraud, fraud in the inducement, breach of contract and

breach of fiduciary duties.  Reversing the district court, the Fifth Circuit held that the attorney's

contacts with the State of Texas were sufficient to confer personal jurisdiction.  These contacts

included numerous facsimiles, letters and phone calls by the German attorney sent directly to his

client in the State of Texas, the contents of which contained the misrepresentations and omissions

that gave rise to the lawsuit.  *Wein Air*, 517 F.3d at 212.  Wein Air provided a sworn affidavit from

its employee detailing the telephone calls and other communications from the German attorney to

Wein Air in Texas "containing the promises, assurances and representations that are at the heart

of this lawsuit." *Id.*  In addition, the German attorney visited Texas at the beginning of the attorney-

client relationship and met once with the client in the State of Texas.  *Id.* at 214.

Unlike in *Wein Air*, even assuming all facts as alleged to be true, in this case the Bryan Cave

Defendants had no contact with the State of Texas in connection with the establishment of the

Patel DBP.  The Bryan Cave Defendants did not direct any activity into the State of Texas, did not

communicate with Plaintiffs in Texas and did not enter into any contract with Plaintiffs in Texas.

(*See* Bryan Cave App. at Ex. 1 ¶¶ 15-20.)  With regard to the Bryan Cave Opinion and the March

16, 2004 memorandum, Plaintiffs allege, on information and belief, that the Bryan Cave Defendants

provided the March 16, 2004 memorandum to Hartstein/ECI, knowing that Hartstein/ECI "would

distribute this memorandum to their client, including Plaintiffs."  (*See* Compl. ¶ 50.)  Nowhere do

Plaintiffs allege that the Bryan Cave Defendants sent the memorandum to them in Texas, or

communicated with them about it.  As to the Bryan Cave Opinion, Plaintiffs allege that the Bryan

Cave Defendants "understood and intended that the Bryan Cave Opinion would be – and was being

– used to market the Pendulum Plan."  (*Id.* ¶ 30.)  Nowhere do Plaintiffs allege that Bryan Cave

provided them with the Bryan Cave Opinion, or specifically sent the Bryan Cave Opinion to Dr.

Patel in Texas.   Under these circumstances, the Court determines that, even assuming the

allegations in the First Amended Complaint are true, the Bryan Cave Defendants *themselves* have

not purposefully directed any activity toward Texas.   Rather, it was third parties (including

Hartstein/ECI) that allegedly directed communications into the State of Texas that ultimately give

rise to this cause of action.  *See generally Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d

777, 785 (Tex. 2005) (internal quotations and citation omitted) ("it is only defendant's contacts

with the forum state that count: purposeful availment ensures that a defendant will not be haled into

a jurisdiction solely as a result of the unilateral activity of another party or third person.").

Otherwise stated, the type of activity directed at the forum state by the nonresident attorneys in

*Wein Air* and *Walk Haydel* sufficient for the Fifth Circuit to find that the nonresident attorneys in

those cases could reasonably anticipate being haled into court in Texas, is simply lacking in this

48

case.[13]

With regard to statements made by Plaintiffs' attorneys in connection with *Berry* that the Bryan Cave Defendants are not subject to personal jurisdiction in the State of Texas, Plaintiffs urge the Court to ignore these statements since this case, unlike *Berry*, "involves a single plaintiff group made up only of Texas residents and because it entails an attorney-client relationship completely absent in *Berry*." (Pl. Resp. to Bryan Cave Mot. at 9.) To the extent Plaintiffs distinguish *Berry* based on the alleged attorney-client relationship in this case, the Court has already noted that the "bare existence of an attorney-client relationship is not sufficient" to establish minimum contacts. *See Trinity Indus.*, 41 F.3d at 230. Accordingly, although not outcome-determinative, the Court acknowledges Plaintiffs' attorney's statements that the Bryan Cave Defendants are not subject to this Court's jurisdiction. Even absent these statements, however, the Court determines, for the reasons set forth above, that Plaintiffs have failed to make a *prima facie* showing that the Bryan Cave Defendants have sufficient contacts with the State of Texas to support the exercise of specific jurisdiction.

*General Jurisdiction*

Plaintiffs concede in the First Amended Complaint that the Court does not have general jurisdiction over the Bryan Cave Defendants. (*See* Compl. ¶ 2.) The Court rejects Plaintiffs' attempts to inject, for the first time in their Response, contacts the Bryan Cave Defendants have had

---

[13]To the extent Plaintiffs attempt to argue that the Bryan Cave Defendants are subject to specific jurisdiction because they caused their opinions and memoranda to enter the "stream of commerce" (Pl. Resp. at 8), the Court rejects this argument. The Court has found no decisions applying the "stream of commerce" doctrine to legal work product. In any event, a "nonresident defendant's mere awareness that its product might end up in the forum state is not enough to show" minimum contacts with the forum state. *Ho Wah Genting Kintron SDN BHD v. Leviton Mfg. Co., Inc.*, 163 S.W.3d 120, 130 (Tex. App. – San Antonio 2005, reh'g overruled).

with Texas several months after the inception of this case. (*See* Pl. Resp. to Bryan Cave Mot. at 10-11.) Specifically, Plaintiffs urge the Court to consider, in its assessment of the Bryan Cave Defendants' contacts with the State of Texas, Bryan Cave LLP's December 28, 2008 application to register to transact business in the State of Texas filed with the Texas Secretary of State. (*See id.* and Pl. App. in Supp. of Resp. at 5-6.)

"General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom*, 197 F.3d at 717 (citing *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 840 F.3d 560, 569 (2d Cir. 1996)). In *Metropolitan Life*, the court stated: "In general jurisdiction cases, district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances – up to and including the date the suit was filed – to assess whether they satisfy the 'continuous and systematic' standard. The determination of what period is reasonable in the context of each case should be left to the court's discretion." 840 F.3d at 569-70.

This lawsuit was filed February 12, 2008 (doc. 1), and the First Amended Complaint adding the Bryan Cave Defendants was filed October 10, 2008 (doc. 23). Under the circumstances of this case, the Court determines that a reasonable period of time to assess the contacts is from 1999, when the Bryan Cave Defendants allegedly prepared the Bryan Cave Opinion, until the date Plaintiffs filed the amended complaint, October 10, 2008. Because the December 28, 2008 application filed with the Texas Secretary of State occurred more than two (2) months after the amended complaint was filed, the Court will not consider the application (or any ensuing contacts) in assessing the Bryan Cave Defendants' contacts with the State of Texas. Plaintiffs have already conceded that during the relevant time period, the Bryan Cave Defendants did not have continuous or systematic contacts

50

with the State of Texas such that the Court could exercise general jurisdiction.  (Compl. ¶ 2.)  Based

on this concession, and the facts presented in Richard C. Smith's affidavit (*see* Bryan Cave App. at

Ex. 1 ¶¶ 3-4, 9-11, 12-13, 15-20), the Court concludes that general jurisdiction is lacking in this

case.[14]

In light of the Court's determination that minimum contacts are lacking for either specific

or general jurisdiction, the Court need not reach the question of whether the exercise of jurisdiction

would offend traditional notions of fair play and substantial justice.  Accordingly, for the reasons

stated above, the Court GRANTS Bryan Cave, LLP's and Richard C. Smith's motion to dismiss for

lack of *in personam* jurisdiction.[15]

## III.

## CONCLUSION

Based on the foregoing, the Court:

• **GRANTS** Plaintiffs' Motion to Strike Exhibits Attached to Defendant Pacific Life

Insurance Company's Motion to Dismiss (doc. 19), and **directs** the Clerk of Court

to strike Exhibits A through E in the appendix submitted with Pacific Life's original

motion to dismiss (*see* doc. 12);

• **GRANTS** Bryan Cave LLP's and Richard C. Smith's Motion to Dismiss First

---

[14]Based on the Court's decision to assess the Bryan Cave Defendants' contacts with the State of
Texas from 1999 until the date of the amended complaint, the Court denies as futile Plaintiffs' request for
leave to amend their pleadings to allege general jurisdiction over the Bryan Cave Defendants based on
recent events.  (*See* Pl. Resp. at 11.)

[15]Having determined it lacks personal jurisdiction over the Bryan Cave Defendants, the Court will
not consider the Bryan Cave Defendants' remaining arguments for dismissal under Rule 12(b)(6) and Rule
9(b).

Amended Complaint for lack of *in personam* jurisdiction (doc. 45), and **dismisses** this action **without prejudice** as to Defendants Bryan Cave LLP and Richard C. Smith; and

• **GRANTS** Pacific Life's Motion to Dismiss (doc. 31) as follows:

> • Counts One (violation of Texas Insurance Code), Two (negligent misrepresentation), Three (common law fraud) and Six (civil conspiracy) are **dismissed without prejudice**; and

> • Counts Four and Five (violations of Cal. Bus. & Prof. Code § 17200), to the extent they are based on alleged violations of the California Consumer Legal Remedies Act (§ 1770), are **dismissed with prejudice** in light of the California Supreme Court's decision in *Fairbanks v. Superior Court*, 205 P.3d 201, ___, 2009 WL 1035264 (Cal. Apr. 20, 2009).  Counts Four and Five, to the extent they are based on alleged violations of California's False Advertising Law (§ 17500), are **dismissed without prejudice**.

If Plaintiffs are able to replead any Counts to overcome the grounds stated herein for dismissal of their claims against Defendant Pacific Life, they must do so by no later than twenty (20) days from the date of this Order.[16]  Further, any repleading shall be accompanied by a synopsis of no

---

[16]The Court does not take dismissal of a claim without reaching its merits lightly.  Thus, a plaintiff will be given the opportunity to amend a Complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based.  *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000) (noting that a court may dismiss a claim for failing to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule

52

more than five (5) pages, explaining how the amendments overcome the grounds stated herein for

dismissal.  Should Plaintiffs replead, Pacific Life is hereby granted leave to file a response to Plaintiffs'

synopsis.   Any such response shall not exceed five (5) pages and must be filed within ten (10)

calendar days of the repleading.  No further briefing will be permitted.

      **SO ORDERED.**

      Dated: May 22, 2009

                                    _____
                                      JANE J. BOYLE
                                    UNITED STATES DISTRICT JUDGE

---

12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted.").  Moreover, Plaintiffs in this case have specifically requested the opportunity to replead.  (*See* Pl. Resp. at 25.)