UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PRATUL M. PATEL, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 3:08-CV-248-B-BD |
| v. | § | |
| | § | consolidated with |
| PACIFIC LIFE INSURANCE COMPANY, et al., | § | Civil Action No. 3:08-CV-249-B-BD |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

On May 22, 2009, the Court issued a decision granting a motion to dismiss filed by Defendant Pacific Life Insurance Company ("Pacific Life"). (doc. 73.) The Court granted leave to amend as to those causes of action dismissed without prejudice. On June 30, 2009, Plaintiffs Pratul M. Patel and Pratul M. Patel, M.D., P.A. ("Plaintiffs") filed a Second Amended Complaint. (doc. 78.) At issue is the viability of the Second Amended Complaint. Specifically, the Court must determine whether the allegations in the Second Amended Complaint overcome the pleading deficiencies of the First Amended Complaint, as detailed by the Court in its May 22, 2009 decision granting Pacific Life's motion to dismiss (*see* doc. 73).

### I.

### BACKGROUND

In light of the Court's familiarity with the case, and the parties' extensive prior briefing, rather than have the parties engage in yet another round of briefing, the Court directed the Plaintiffs to file a Synopsis with their Second Amended Complaint detailing how the amended pleadings

1

overcame the deficiencies in the First Amended Complaint. The Court permitted Pacific Life to file a response.

On June 30, 2009, Plaintiffs filed their Second Amended Complaint (doc. 78) and Synopsis (doc. 79), contending that the amended pleadings are sufficient to overcome the pleading deficiencies previously outlined by the Court. On July 10, 2009, Pacific Life filed its response to the Synopsis (doc. 81), arguing that the amended allegations are still deficient under FED. R. CIV. P. 12(b)(6) and 9(b). The issue is ripe for determination.

## II.

## LEGAL STANDARDS

**A.     FED. R. CIV. P. 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss, the Court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotations omitted). However, the Complaint must contain "enough facts to state a claim to relief that is plausible on its face" and "raise [that] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plaintiff's claim meets the plausibility threshold when he "pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (internal quotations omitted). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims.

*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

B.   **FED. R. CIV. P. 9(b)**

A dismissal for failure to plead fraud with particularity in accordance with Federal Rule of Civil Procedure 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). Rule 9(b) provides, in pertinent part, that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). "When a limitation period looms large and the context strongly suggests that claimed 'fraud' walks close to non-actionable expression of opinion, 9(b) takes on especial force." *Williams*, 112 F.3d at 178. In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Essentially, the standard requires the Complaint to allege answers to "newspaper questions" ("who, what, when, where, and how") of the alleged fraud. *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

### III.
### ANALYSIS

In the Second Amended Complaint, Plaintiffs assert causes of action against Pacific Life for: violations of Chapter 521 of the Texas Insurance Code (Count One), negligent misrepresentation (Count Two), common law fraud (Count Three), violations of California's Unfair Competition Law, CAL. BUS. & PROF. CODE, § 17200(Counts Four and Five) and civil conspiracy (Count Six). To assess Plaintiffs' amended pleadings, the Court will consider the grounds for dismissal previously stated in its May 22, 2009 decision (doc. 73), incorporated herein by reference, Plaintiffs' Second Amended Complaint (doc. 78), Plaintiffs' Synopsis (doc. 79), Pacific Life's response (doc. 81), as well as applicable law. The Court first turns to Counts Two and Three.

**A.     Negligent Misrepresentation (Count Two) and Fraud (Count Three)**

In its May 22, 2009 decision granting Pacific Life's motion to dismiss, the Court dismissed Counts Two (negligent misrepresentation) and Three (fraud) for failure to allege fraud with the requisite specificity required by FED. R. CIV. P. 9(b), including failure to adequately plead: (1) when the alleged representations were made; (2) where the alleged representations were made; (3) why the alleged representations were false or misleading at the time; and (4) what facts did Pacific Life allegedly fail to disclose and why did these omitted facts make these affirmative representations misleading. (doc. 73 at 19-24.) Specifically with regard to dismissal for failure to plead with particularity "why" the alleged representations were false when made, noting that the alleged misrepresentations and omissions occurred in 2003, the Court observed that:

> Overall, Plaintiffs appear to be attempting to use the ultimate rulings and rule making by the IRS in 2004-2005, which they allege resulted in the illegality of Dr. Patel's defined benefit plan under section 412(i), to retroactively demonstrate that representations made by Cushner as agent for Pacific Life were false when made in 2003. That leap of logic fails to explain why each representation was false when

4

> made, particularly in light of a legal opinion to the contrary.[1] Alleging that, on information and belief, Pacific Life "received warnings" about the tax risks of the defined benefit plan being marketed by Hartstein/ECI and funded with Pacific Life policies and knew of IRS scrutiny of this type of 412(i) plan in the early 2000s (Compl. ¶ 33) is not the same as alleging that the plan and policy used to find it were illegal when sold to Dr. Patel in May 2003, or that any specific representation allegedly made was false at any time prior to 2004, much less when it was made.

(*Id.* at 23-24.)

In addition to dismissing Counts Two (negligent misrepresentation) and Three (fraud) for failure to satisfy Rule 9(b), the Court noted in *dicta* that, "[t]o the extent Plaintiffs are alleging that any [of the alleged representations] are forward-looking or are opinions as to how the IRS would treat 412(i) plans at any time after Dr. Patel funded the Patel DBP with a Pacific Life insurance policy in 2003, the Court finds those opinions as to future events non-actionable as the basis for a fraud claim under these circumstances." (*Id.* at 24.) Specifically, the Court pointed out that "[e]ach statement allegedly made by Cushner is a statement regarding federal income tax law or policy, including the policies of a third-party government agency–the IRS." (*Id.*) On the face of these pleadings, the Court opined, "[a]s a matter of law, any representation or prediction by any alleged Pacific Life agent as to how the IRS would treat the 412(i) plans, and the funding thereof, in the future is either a non-actionable opinion or was unjustifiably relied upon." (*Id.* at 24 (and cases cited therein).) The Court also pointed out that:

> allegations that Cushner told Dr. Patel that "he would receive large, tax-free returns from this arrange the ment" is also a non-actionable opinion of future performance by the IRS. As alleged, the "tax free returns" happen, usually after "five to seven

---

[1]The Court was referring to Plaintiffs' allegations that, in September 1999, the law firm of Bryan Cave LLP issued a legal opinion that funding this type of defined benefit plan being marketing to Plaintiffs with a life insurance policy issued by Indianapolis Life, "or a substantially similar policy" "'more likely than not' can meet the requirements of section 412(i) of the Code." (doc. 78, First Am. Compl. ¶ 27.)

> years" or in any event after the 412(i) plan participant buys the insurance policy from the trust holding it. Again, Pacific Life and Cushner are not alleged to be specially situated to predict future tax treatment by the IRS, not would it be reasonable for Plaintiffs to rely on such a projection. There is no allegation that Pacific Life or any of its agents had any special knowledge or ability to control the IRS's enactment or enforcement of its policies related to section 412(i).

(*Id.* at 25-26.)

In their Second Amended Complaint, Plaintiffs attempt to remedy the foregoing infirmities by alleging that the representations were false when made in 2003 based on IRS pronouncements made prior to 2001 regarding the valuation of insurance contracts distributed from qualified plans, including Announcement 88-51 and Notice 89-25. (*See* Sec. Am. Compl. ¶¶ 21-24; Synopsis at 1-2.) Plaintiffs further allege that Revenue Procedure 2004-16 and the 2005 Final Regulations (*see infra* note 2) "did *not* represent a change in the law." (Synopsis at 1 (original emphasis).) In its response, Pacific Life argues to the contrary.

Having considered the amended allegations, the parties' legal arguments and the specific IRS pronouncements and regulations at issue, the Court determines that Plaintiffs' amended allegations fail to overcome the Rule 9(b) pleading deficiency previously stated by the Court, namely, Plaintiffs have failed to explain *why* the alleged representations by Pacific Life's purported agents were false when made in 2003. Announcement 88-51 and Notice 89-25 fail to provide the type of definitive guidance about the legality of funding 412(i) plans with specially-designed insurance policies, such as the Pacific Life policy purchased by Plaintiffs, to support the proposition that Pacific Life's agents knew that the alleged representations were false when made in 2003. *See* I.R.S. ANNOUNCEMENT 88-51, 1988-13 I.R.B. 34, 1988 WL 561238 (March 28, 1988) (warning that a valuation method other than insurance policy's cash surrender value "*may* have to be used for purposes of determining

6

the taxable amounts under section 72 of the Code") (emphasis added); I.R.S. NOTICE 89-25, 1989-1 C.B. 662, 1989 WL 587481 (March 20, 1989) (the reserve value may be more appropriate approximation of insurance contract's fair market value in certain circumstances). In short, the Court agrees with Pacific Life that the only definitive guidance specifically applicable to the 412(i) plans at issue, and the alleged representations made regarding the tax benefits and legality of the plans, appears in the IRS's 2004 revenue rulings and 2005 final regulations.[2] In sum, given Plaintiffs' failure to plead fraud with the requisite particularity, the Court, for the reasons set forth in its May 22, 2009 decision (doc. 73), and for the above-stated reasons, DISMISSES Counts Two (negligent misrepresentation) and Three (fraud) of the Plaintiffs' Second Amended Complaint for failure to satisfy FED. R. CIV. P. 9(b).[3]

The Court now revisits *dicta* in its prior decision, where it stated: "[t]o the extent Plaintiffs are alleging that any [of the alleged representations] are forward-looking or are opinions as to how

---

[2] The 2004 guidance clarified key unsettled valuation issue. *See* REV. PROC. 2004-16, 2004-1 C.B. 559, 2004 WL 258225 (March 8, 2004) (providing interim guidance for valuing distributions of insurance policies used to fund section 412(i) plans since "[t]he current regulations do not define 'fair market value' or 'entire cash value' and questions have arisen regarding the interaction of those two provisions and whether 'entire cash value' includes a reduction for surrender charges"); REV. RUL. 2004-20, 2004-1 C.B. 546, 2004 WL 259195 (March 8, 2004) (clarifying how to deduct plan contributions when 412(i) plans are funded by life insurance policies in excess of participant's death benefit under plan's terms); REV. RUL. 2004-21, 2004-1 C.B. 544, 2004 WL 259196 (March 8, 2004) (providing guidance regarding whether 412(i) plans funded with life insurance contracts will satisfy the non-discrimination requirements). *See also* Value of Life Insurance Contracts When Distributed From a Qualified Retirement Plan, 26 C.F.R. Part 1, 2005 WL 2053238 (Final Regulations) (Aug. 29, 2005) (amending Treasury Regulation § 1.402 to remove the term "entire cash value" and providing instead that "the policy cash value and all other rights under such contract . . . are included in determining the fair market value of the contract.")

[3] Furthermore, as stated in its May 22, 2009 decision, as Plaintiffs "have not urged a separate focus on the negligent misrepresentation claims," but have "effectively pled negligent misrepresentation as a lesser-included offense to their fraud claims[,]" Plaintiffs' negligent misrepresentation claim is similarly subject to the pleading requirements of Rule 9(b), and therefore must also be dismissed. (doc. 73 at 31 (and cases cited therein).)

the IRS would treat 412(i) plans at any time after Dr. Patel funded the Patel DBP with a Pacific Life insurance policy in 2003, the Court finds those opinions as to future events non-actionable as the basis for a fraud claim under these circumstances." (*Id.* at 24.) At the time, the Court did not dismiss the complaint on this basis. In light of the foregoing, however, the Court concludes that the deficiency noted in *dicta* -- that, as a matter of law, regulations and rulings by the IRS in 2004 and 2005 cannot be used to show that statements or omissions purportedly made in 2003 were false when made – has not been remedied by Plaintiffs. The amended pleadings detailed above lead to only one conclusion, that is, the Plaintiffs are, indeed, alleging that Pacific Life's alleged agent, Cushner, was giving opinions regarding future tax treatment by the IRS. As the Court stated in its May 22, 2009 opinion, "[a]s a matter of law, any representation or prediction by any alleged Pacific Life agent as to how the IRS would treat the 412(i) plans, and the funding thereof, in the future is either a non-actionable opinion or was unjustifiably relied upon." (*Id.* at 24 (and cases cited therein).) In short, the Court agrees with Pacific Life that Plaintiffs' amended allegations do not remedy this deficiency. Accordingly, as Plaintiffs' amended pleadings do not overcome this obstacle, in addition to dismissing Counts Two (negligent misrepresentation) and Three (fraud) under Rule 9(b), for the reasons previously stated in *dicta* in its May 22, 2009 decision (doc. 73 at 22-26 (and cases cited therein)), as well as the reasons stated above, the Court DISMISSES Count Two (negligent misrepresentation)[4] and Count Three (fraud) pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim. *See generally Williams v. Sidley, Austin, Brown & Wood, LLP*, 816 N.Y.S.2d 702 (Table), 2006

---

[4]As noted by the Court in its May 22, 2009 decision, under Texas law a claim for negligent misrepresentation requires the defendant to misstate an existing fact, and does not occur when the speaker is merely speculating as to a future event. (doc. 73, Mem. Op. at 32 (quoting *Clardy Mfg. Co. v. Marine Midland Business Loans, Inc.*, 88 F.3d 347, 357 (5th Cir. 1996).)

WL 684599, at *5 (N.Y. Super. Ct. 2006) ("The alleged misrepresentations regarding the purported safety and viability of the Coastal III Fund as a tax sheltered investment fall within the category of predictions or expressions of future events, which are neither affirmations of events that when made, the defendants knew or could have known would not occur, nor assertions of present facts that were exclusively within the defendants' knowledge.")[5]; *see also Borba v. Thomas*, 138 Cal. Rptr. 565, 570 (Cal. App. 1977) (finding no reasonable reliance upon a statement that a government agency would approve the parties' contract, as there is no right to rely on the representation of the "future conduct of public officials"); *Bryant v. Transcon. Gas Pipe Line Corp.*, 821 S.W.2d 187, 190 (Tex. App. – Houston 1991, writ denied) (opinions, misrepresentations of law and predictions of future events are not actionable under Texas law); *Duperier v. Texas State Bank,* 28 S.W.3d 740, 749 (Tex. App.-- Corpus Christi 2000, rev. dismissed) (investment advisor's representations that future resetting of

---

[5]The Court finds the *Williams* decision instructive. In *Williams*, the court dismissed a complaint lodged by investors against a law firm, financial institution and accounting firm regarding alleged misrepresentations as to the purported safety and viability under the tax laws of the "Coastal III Fund" or "CTF" in which plaintiffs invested, specifically where the IRS issued a notice three years after the alleged misrepresentations that the claimed tax benefits purportedly generated by the transactions in question were not allowable for federal income tax purposes. Dismissing the complaint on the grounds, *inter alia*, that plaintiffs failed to allege any misrepresentation of fact by defendants which fraudulently induced them to enter into the CTF, the court stated: "Facts regarding positions taken by the IRS in similar instances or with similar types of transactions were not exclusively within the defendant's knowledge, and it may be inferred from the allegations contained within the four corners of the amended complaint that plaintiffs understood the risks, took a gamble that the CTF transactions would achieve the desired tax savings, and lost." *Williams*, 2006 WL 684599, at *5. Similarly, in this case, based on the four corners of the Second Amended Complaint, the "more likely than not" Bryan Cave legal opinion arguably provided Plaintiffs with ample notice that there existed a risk that the Patel DBP, as funded with the Pacific Life insurance policy, might not satisfy the requirements of 412(i). The Court notes that the presiding judge in *Williams* later reinstated the complaint after receiving a "deferred prosecution agreement," as well as a "statement of admissions" from a related criminal prosecution according to which defendants "and others purposefully drafted the opinion letters and transactional documents to include misrepresentations regarding the substance, implementation and purpose of the CTF transactions, which went beyond the mere predictions and expressions of future events originally alleged in plaintiffs' amended complaint." *See Williams v. Sidley, Austin, Brown & Wood, LLP*, 824 N.Y.S.2d 759 (Table), 2006 WL 2739013 at *5 (N.Y. Super. Ct. Sept. 22, 2006) (internal punctuation omitted), *aff'd*, 832 N.Y.S.2d 9 (N.Y.A.D. 1 Dept., Mar. 1, 2007). No such allegations are present here.

9

interest rate on notes was unlikely is non-actionable opinion).

B. **Statutory Claims (Counts One, Four and Five)**

Plaintiffs plead the following statutory claims: violations of Chapter 521 of the Texas Insurance Code (Count One) and violations of California's Unfair Competition Law, CAL. BUS. & PROF. CODE, § 17200 (Counts Four and Five).[6] These statutory counts, premised on the same alleged misrepresentations as the fraud claim in Count Three, are also subject to the Fifth Circuit's pleading requirements of Rule 9(b) applicable to fraud claims. *See generally Frith v. Guardian Life Ins. Co. of America*, 9 F. Supp. 2d 734, 741-43 (S.D. Tex. 1998) (dismissing fraud-based Texas Insurance Code claim for failure to comply with Rule 9(b)); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-1105 (9th Cir. 2003) (CAL. BUS. & PROF CODE, § 17200 claim based on a "fraudulent business act or practice" must be alleged with particularity in accordance with Rule 9(b)); *Kennedy v. Natural Balance Pet Foods, Inc.*, 2007 WL 2300746, at *5-*6 (S.D. Cal. Aug. 8, 2007) (claims asserting violations of California's False Advertising Law at Section 17500 grounded in fraud are subject to Rule 9(b)'s heightened pleading standard); *Germain v. J.C. Penney Co.*, No. CV09-2847, 2009 WL 1971336, at *4 (C.D. Cal. July 6, 2009) (same). Accordingly, in light of the Court's determination that Plaintiffs' amended fraud allegations fail to adequately plead why the alleged representations were false at the time they were made in 2003, the Court dismisses Counts One, Four and Five pursuant to FED. R. CIV. P. 9(b).

---

[6]Plaintiffs assert two claims for violations of California's UCL. Count Four for purported "unlawful" conduct is premised on allegations that Pacific Life violated California's False Advertising Law ("FAL"). Count Seven is premised on alleged "fraudulent conduct."

## C. Civil Conspiracy (Count Six)

Civil conspiracy is defined as "a combination of two or more persons [acting] to accomplish an unlawful purpose, or accomplish a lawful purpose by unlawful means[.]" *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). However, civil conspiracy is frequently referred to as a "derivative tort" because "a defendant's liability for conspiracy depends on participation in some underlying tort." *Id.* As the Court has granted Pacific Life's motion to dismiss as to Plaintiffs' amended fraud claim, no underlying tort exists on which to base conspirator liability. *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997) (granting summary judgment on conspiracy claim noting that "allegations of conspiracy are not actionable absent an underlying [tort]"); *Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997) (noting that "because the fraud claim fails[,] the fraud based conspiracy claim must fail also"). Accordingly, Count Six is dismissed pursuant to FED. R. CIV. P. 12(b)(6).

## IV.

## CONCLUSION

For the reasons stated above, the Court determines that Plaintiffs have failed to allege sufficient facts to overcome the previously-stated grounds for dismissal. Accordingly, with respect to the Plaintiffs' Second Amended Complaint (doc. 78), it is hereby ORDERED that: Count One (Chapter 521 of the Texas Insurance Code) is **DISMISSED with prejudice** pursuant to FED. R. CIV. P. 9(b); Count Two (negligent misrepresentation) is **DISMISSED with prejudice** pursuant to FED. R. CIV. P. 9(b) and 12(b)(6); Count Three (fraud) is **DISMISSED with prejudice** pursuant to FED. R. CIV. P. 9(b) and 12(b)(6); Counts Four and Five (California's Unfair Competition Law, CAL. BUS. & PROF. CODE, § 17200) are **DISMISSED with prejudice** pursuant to FED. R. CIV. P. 9(b); and

Count Six (conspiracy) is **DISMISSED with prejudice** pursuant to FED. R. CIV. P. 12(b)(6).

Normally the Court will allow a plaintiff the opportunity to amend where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *See McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995); *see also Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."); *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000) (while court may dismiss a claim for failing to comply with Rule 9(b), "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so.").

In this case, Plaintiffs have had multiple opportunities to state a claim, including their Second Amended Complaint, filed after the Court's May 22, 2009 decision detailing the deficiencies in the pleadings. Under these circumstances, the Court determines that allowing further amendment will be futile and cause needless delay. Moreover, the Court notes that Plaintiffs have not requested the opportunity to replead. Accordingly, in its discretion, the Court determines that further amendment of the pleadings is not warranted and all of Plaintiffs' claims against Defendant Pacific Life are therefore **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

**DATED August 27, 2010**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE