# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **PRATUL M. PATEL,** *et al.*, | § | |
| | § | **Civil Action No. 3:08-CV-248-B-BD** |
| **Plaintiffs,** | § | |
| | § | **consolidated with** |
| **v.** | § | **Civil Action No. 3:08-CV-249-B-BD** |
| | § | |
| **PACIFIC LIFE INSURANCE** | § | |
| **COMPANY,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

---

## MOTION FOR RECONSIDERATION AND FOR LEAVE TO AMEND AND SUPPORTING MEMORANDUM OF LAW

---

Eric D. Madden
State Bar No. 24013079
Brandon V. Lewis
State Bar No. 24060165
DIAMOND MCCARTHY LLP
1201 Elm Street, Suite 3400
Dallas, Texas 75270
(214) 389-5300 (telephone)
(214) 389-5399 (facsimile)
emadden@diamondmccarthy.com
blewis@diamondmccarthy.com

COUNSEL FOR PLAINTIFFS

## TABLE OF CONTENTS

**Page**

I.   BACKGROUND ................................................................................................. 1

II.  LEGAL STANDARDS ...................................................................................... 2

III. ARGUMENTS AND AUTHORITIES ............................................................. 4

     A.   THE COURT SHOULD RECONSIDER THE MEMORANDUM
          OPINION AND DENY PACLIFE'S MOTION TO DISMISS............................ 4

          1.   PacLife's Representations Were False
               When Made to Dr. Patel.......................................................... 5

          2.   PacLife's Representations Were Not
               Non-Actionable Opinions ........................................................ 7

          3.   Dr. Patel Reasonably Relied Upon
               PacLife's Representations ...................................................... 9

     B.   ALTERNATIVELY, THE COURT SHOULD GRANT
          LEAVE TO FILE THE AMENDED COMPLAINT ......................................... 11

          1.   The Amended Complaint Does
               Not Result from Undue Delay................................................ 12

          2.   The Amended Complaint Does Not Involve
               Bad Faith or Dilatory Motive ................................................ 12

          3.   The Amended Complaint Does Not Cause Undue Prejudice ................. 13

          4.   The Amended Complaint Is Not Futile.................................... 13

IV.  PRAYER ............................................................................................................ 15

## TABLE OF AUTHORITIES

**Page**

### CASES

*Borba v. Thomas,* 138 Cal. Rptr. 565, 570, 572 (Cal. Ct. App. 1977) ...................................10, 15

*Bouaziz v. AZT Corp.*, No. 3:10-CV-053, 2010 WL. 2730594 (N.D. Tex. July 9, 2010).............. 9

*Duperier v. Texas State Bank*, 28 S.W.3d 740 (Tex. App.—Corpus Christi 2000, rev. dismissed) ................................................................................................. 10

*Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir. 1981)..................................... 12

*Eisenberg v. Gagnon,* 766 F.2d 770, 773, 778-79 (3d Cir. 1985)........................................... 9, 10

*Foman v. Davis*, 371 U.S. 178 (1962) ..............................................................................3, 4, 12

*Green v. Beer*, No. 06 Civ. 4156, 2009 WL 911015 (S.D.N.Y. Mar. 31, 2009) .....................................................................................8, 9, 10

*Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995) ........................................................................... 2

*Hall v. Nat'l Gypsum Co.*, 105 F.3d 225 (5th Cir. 1997) ............................................................ 3

*In re Apple Computer Sec. Litigation*, 886 F.2d 1109 (9th Cir. 1989)........................................ 8

*In re Benjamin Moore & Co.*, 318 F.3d 626 (5th Cir. 2002)........................................................ 3

*Johnson v. Buentello*, No. 3:09-CV-1023-B, 2010 WL. 727752 (N.D. Tex. Mar. 2, 2010) ......... 3

*Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 134 (1936)) ........................................... 6

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) ........................................................................................ 9

*Maveaux v. La. Health Serv. & Indemnity Co.*, 376 F.3d 420 (5th Cir. 2004)............................ 12

*Pac. Mut. Life Ins. Co. v. Ernst & Young & Co.*, 10 S.W.3d 798 (Tex. App.—Dallas 2000), *rev'd on other grounds*, 51 S.W.3d 573 (Tex. 2001) ..................................... 10

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003).................................................... 3, 13

*Rubinstein v. Collins*, 20 F.3d 160 (5th Cir. 1994) ...........................................................7, 8, 14

*Seippel v. Jenkens & Gilchrist, P.C.*,
   341 F. Supp. 2d 363 (S.D.N.Y. 2004) ................................................. 8, 9, 10, 11

*Smith v. EMC Corp.*, 393 F.3d 590 (5th Cir. 2004) ........................................ 4

*Tolentino v. Hartford Life and Annuity Ins. Co.*,
   No. 2:09-CV-1327-JCM (LRL) (D. Nev. Mar. 25, 2010) ................................ 4

*Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269 (Tex. 1995) .......................... 9

*Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) ............................... 7, 14

*Verizon Employee Benefits Comm. v. Adams*, No. 3:05-CV-1793-M, 2006 WL 889997
   (N.D. Tex. Apr. 5, 2006) ............................................................. 13

*Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334 (E.D.N.Y. 2008) .......... 8

*Williams v. Sidley, Austin, Brown & Wood, LLP,* 816 N.Y.S.2d 702,
   2006 WL 684599, at *5 (N.Y. Sup. Ct. 2006) ..................................... 10, 15

## STATUTES AND RULES

26 U.S.C. § 6694(a)(2)(B) ................................................................ 11

26 U.S.C. § 7805(b)(1) ................................................................... 6

Fed. R. Civ. P. 15(a) ........................................................... 1, 2, 3, 11, 12

Fed. R. Civ. P. 59(e) ............................................................. 1, 2, 3, 12

Rev. Proc. 89-14, 1989-1 C.B. 814 at § 3.01 .............................................. 6

## OTHER AUTHORITIES

Charles Alan Wright et al., Federal Practice and Procedure § 1473, at 521
   (2d ed. 1990) ......................................................................... 3

Eric M. Pauly, *Raising Penalty Standard "More Likely Than Not"
   Creates Conflict Between Tax Lawyers and Their Clients*,
   47 Washburn L.J. 757, 760-61 (2008) ................................................. 11

Restatement (Second) of Torts § 539 cmt. b (1977) ....................................... 7, 8

**TO THE HONORABLE JANE J. BOYLE, UNITED STATES DISTRICT JUDGE:**

Plaintiffs Pratul M. Patel, M.D. and Pratul M. Patel, M.D., P.A. (collectively, "Dr. Patel") respectfully request that the Court reconsider its memorandum opinion dated August 27, 2010,[1] pursuant to Federal Rule of Civil Procedure 59(e), and alternatively, grant Dr. Patel leave to file an amended complaint, which is attached hereto as Exhibit "A," pursuant to Federal Rule of Civil Procedure 15(a) and Local Rule 15.1(b).

## I.  BACKGROUND

This case is about an abusive tax shelter designed, promoted, and sold to unwitting investors, including Dr. Patel, as a safe, legal, and appropriate way to save for retirement. Defendants — a pension consulting firm and an international insurance company — worked together to create a special life insurance policy, which they marketed for use in funding purportedly qualified retirement plans under section 412(i) of the Internal Revenue Code. These plans, however, did not comply with the letter or spirit of the law. Defendants not only received express warnings regarding these problems from industry experts and their own professional advisors, but also learned that IRS officials had explicitly criticized these purported 412(i) plans and the special insurance policies used to fund such plans.

In January 2003, senior IRS officials delivered a presentation regarding "aggressive tax practices" at a conference attended by Defendants. The IRS officials declared these plans to "illegal Section 412(i) schemes," which had "a criminal side . . . beyond any eventual tax penalties or fines" and would be a "very high priority" for the IRS. Yet Defendants wholly failed to disclose these facts to Dr. Patel, who invested in his plan <u>after</u> the explicit IRS criticisms. In February 2004, the IRS issued two revenue rulings and proposed regulations that

---

[1] Mem. Op. at 11-12 (Docket No. 90).

merely clarified (but did not change) the law regarding a few aspects of these purported 412(i) plans.  The IRS then commenced a nationwide audit that went well beyond those limited issues. Rather, the IRS focused on all defects in these plans and imposed taxes, interest, and penalties on Dr. Patel and others for tax years preceding the revenue rulings and proposed regulations.

Dr. Patel filed this action on February 12, 2008.[2]  PacLife filed its motion to dismiss more than two years ago.[3]  On May 22, 2009, the Court granted PacLife's motion to dismiss, but directed Dr. Patel to file an amended complaint and a five-page synopsis explaining how the amended complaint overcame the deficiencies that resulted in dismissal of the prior complaint.[4] Dr. Patel filed his synopsis and amended complaint on June 30, 2009.  In its Memorandum Opinion and Order dated August 27, 2010 (the "Memorandum Opinion"), the Court determined that Dr. Patel's amended complaint was still deficient and dismissed his claims against PacLife with prejudice under Federal Rules of Civil Procedure 9(b) and 12(b)(6).[5]

For the reasons discussed below, Dr. Patel respectfully requests reconsideration of the Memorandum Opinion, pursuant to Federal Rule of Civil Procedure 59(e), and alternatively, leave to file the amended complaint attached hereto as Exhibit "A" (the "Amended Complaint"), pursuant to Federal Rule of Civil Procedure 15(a).

## II.  LEGAL STANDARDS

This Court has considerable discretion to grant or deny a motion for reconsideration under Federal Rule of Civil Procedure 59(e).[6]  In exercising this discretion, the Court must

---

[2] Defined terms used herein shall have the same meaning ascribed to them in the Second Amended Complaint (Docket No. 78).

[3] The Consultant Defendants did not file a motion to dismiss.  Rather, they filed an answer on June 30, 2008.

[4] Mem. Op. at 52-53 (Docket No. 73).

[5] Mem. Op. at 11-12 (Docket No. 90).

[6] *See Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995).

"strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts."[7]  The Court may grant a Rule 59(e) motion for four reasons:  (1) to consider new evidence; (2) to correct clear errors of law or fact upon which the judgment is based; (3) to prevent a manifest injustice; and (4) to consider an intervening change in the controlling law.[8]  Here, Dr. Patel respectfully moves for reconsideration to correct errors of law and fact and to prevent a manifest injustice for the reasons set forth below.

Alternatively, Dr. Patel seeks leave to file the Amended Complaint.  When a district court dismisses a complaint with prejudice, the plaintiff may request leave to amend only by appealing the judgment or by seeking reconsideration of the judgment under Federal Rule of Civil Procedure 59(e).[9]  However, the disposition of such a Rule 59(e) motion is governed by the same considerations controlling a motion for leave to amend a complaint under Federal Rule of Civil Procedure 15(a).[10]  Rule 15(a), of course, dictates that leave to amend the pleadings "shall be freely given when justice so requires."[11]  The United States Supreme Court has long instructed that "this mandate is to be heeded."[12]  Rule 15(a) reinforces one of the fundamental policies underlying the Federal Rules — that pleadings are not an end in themselves, but are merely a means to ensure each case is decided on its merits.[13]  Thus, "if the underlying facts relied upon

---

[7] *Id.*

[8] *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002); *Johnson v. Buentello*, No. 3:09-CV-1023-B, 2010 WL 727752, at *1 (N.D. Tex. Mar. 2, 2010).

[9] *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003).

[10] *See id.*

[11] FED. R. CIV. P. 15(a).

[12] *Foman v. Davis*, 371 U.S. 178, 183 (1962).  Indeed, the United States Supreme Court held that the court of appeals erred in affirming the district court's denial of a motion to vacate the judgment dismissing the plaintiff's breach-of-contract claim in order to allow him to amend his complaint with a quantum meruit claim.  *Id.* at 182.

[13] *See* 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1473, at 521 (2d ed. 1990); *see also Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cir. 1997) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of a pleading is to facilitate a proper decision on the merits.").

by a plaintiff may be a proper subject for relief, he ought to be afforded an opportunity to test his claim on the merits."[14]

Given this liberal policy toward amendments, the burden of demonstrating why leave to amend should not be granted falls squarely on the non-moving party.[15]   In deciding whether the non-movant has carried this burden, courts consider five factors:   (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by prior amendments; (4) undue prejudice to the opposing party; and (5) futility of the proposed amendment.[16]   These factors weigh in favor of Dr. Patel's proposed amendment in this particular case.

### III.  ARGUMENTS AND AUTHORITIES

### A.   THE COURT SHOULD RECONSIDER THE MEMORANDUM OPINION AND DENY PACLIFE'S MOTION TO DISMISS.

The Court dismissed Dr. Patel's claims for three reasons:   (1) Dr. Patel failed to explain why PacLife's representations were false when made in 2003;[17] (2) Dr. Patel premised his claims on non-actionable opinions or predictions as to how the IRS would treat 412(i) plans in the future;[18] and (3) Dr. Patel could not have reasonably relied upon PacLife's representations as a matter of law.[19]   As explained below, the Court should reconsider these rulings to correct errors of law and/or fact and to prevent manifest injustice.[20]

---

[14] *Foman*, 371 U.S. at 182.

[15] *See id.* at 187.

[16] *See, e.g.*, *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004).

[17] Mem. Op. at 4-5 (Docket No. 90) (incorporating the May 22, 2009 decision by reference).

[18] *Id.* at 7-8.

[19] *Id.*   The Court also dismissed Dr. Patel's conspiracy claim and statutory claims for these reasons.  *Id.* at 10-11.

[20] Another federal district court recently rejected these same arguments raised by Hartford Life Insurance and Annuity Company ("Hartford") in very similar case.  *See Tolentino v. Hartford Life and Annuity Ins. Co.*, No. 2:09-CV-1327-JCM (LRL) (D. Nev. Mar. 25, 2010).  Ironically, the *Tolentino* case involved:  (a) a complaint that tracked (verbatim in many cases) the allegations from Dr. Patel's complaint; and (b) the same lawyers who represent Hartford in this consolidated action.  A true and correct copy of the *Tolentino* court's opinion is attached hereto as Exhibit "B."

1.      **PacLife's Representations Were False When Made to Dr. Patel.**

In its Memorandum Opinion, the Court focused only on the narrow issues addressed by the IRS in the February 2004 revenue rulings and proposed regulations.[21]   However, as Dr. Patel alleged in his Second Amended Complaint, PacLife's representations and omissions were false and misleading for many reasons that had nothing to do with the revenue rulings and proposed regulations.[22]   The Patel DBP and the PacLife policy used to fund it violated existing law and/or presented substantial tax risks for a number of other reasons.[23]   The Patel DBP, for example, did not comply with the incidental benefit rule, the exclusive benefit rule, the plan permanency requirement, and other requirements to be a qualified section 412(i) plan.[24]   These problems were explicitly recognized by IRS officials, industry experts, and even PacLife itself long before the IRS issued revenue rulings and proposed regulations in February 2004.[25]   And in any event, nothing about those rulings and regulations addressed these issues.[26]   Thus, it was false and misleading for PacLife: (1) to represent that the Patel DBP, including the PacLife policy used to fund the plan, was appropriate and permissible under existing law; and (2) to fail to disclose the known problems with this purported 412(i) arrangement.

---

[21] Mem. Op. at 6-7 & n.2 (Docket No. 90).

[22] Second Am. Compl. ¶¶ 20, 25-30, 62-66, 68, 86, 103-104 (Docket No. 78).

[23] *Id.*   The Amended Complaint discusses these issues in even greater detail. Ex. A ¶¶ 25-56.

[24] Second Am. Compl. ¶¶ 25-27 (discussing the plan permanency requirement), ¶¶ 28-30 (discussing other section 412(i) requirements), ¶ 86 (stating that the IRS determined that the Patel DBP violated, *inter alia*, the incidental benefit rule, the exclusive benefit rule, and the plan permanency requirement).

[25] *Id.* ¶ 47 (stating that Pacific Life's counsel "expressed concerns regarding the plan permanency requirement and the incidental benefit rule as they applied to the Pendulum Plan in early 2002"), ¶¶ 48-50 (quoting criticisms by senior IRS officials directed at the Pendulum Plan in October 2002), ¶¶ 51-52 (discussing Pacific Life's internal discussions related to the IRS criticisms, including the plan permanency requirement), ¶¶ 54-55 (discussing comments by senior IRS officials regarding "illegal Section 412(i) schemes"), ¶¶ 72-75 (discussing Pacific Life's concerns related to the incidental benefit rule and plan permanency requirement).

[26] *Id.* ¶¶ 78-80.

Moreover, PacLife's representations and omissions were false and misleading even as to those limited issues addressed in the revenue rulings and proposed regulations.  These IRS actions did <u>not</u> represent a change in the law.  First, a revenue ruling is merely the IRS interpretation of existing tax law.[27]  Second, IRS regulations only carry out the will of Congress as expressed in existing tax law.[28]  Third, these particular regulations simply restated the principle — first stated fifteen years earlier in Announcement 88-51 and Notice 89-25 — that insurance contracts in a qualified plan must be valued at their fair market value, not some artificially suppressed cash value.[29]  Fourth, even though the proposed regulations were to be applied prospectively,[30] the IRS disallowed Dr. Patel's deductions and imposed penalties and interest as to prior tax years.[31]  This indicates that the IRS itself concluded that the Patel DBP violated existing law without regard to the new regulations proposed in February 2004.

Finally, even if the IRS did not issue "definitive guidance" until February 2004,[32] PacLife still made false and misleading representations and omissions as to the underlying issues.  For example, PacLife wholly failed to disclose that all prior IRS guidance contradicted its representations regarding one of the most important features of these 412(i) plans — the use of "springing cash value" insurance policies to achieve a short-term and tax-free extraction of the already tax-deductible dollars from plan.[33]  The IRS had repeatedly issued criticisms and

---

[27] *See id.* ¶ 81 (citing Rev. Proc. 89-14, 1989-1 C.B. 814 at § 3.01 ("A 'revenue ruling' is an official interpretation by the Service of the internal revenue laws and related statutes . . . .")).

[28] *See id.* (citing *Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 134 (1936)).

[29] *See id.* (noting that "the regulations explicitly and repeatedly stated that they only 'clarify' existing tax law"); *see also id.* ¶¶ 82-85 (discussing Announcement 88-51 and Notice 89-25).

[30] The Internal Revenue Code expressly states that new regulations should not be applied retroactively to prior tax years (except in limited circumstances not applicable here).  *See* 26 U.S.C. § 7805(b)(1).  Similarly, the regulations at issue here state that they are effective only as to transactions occurring on or after February 13, 2004.

[31] Second Am. Compl. ¶ 86.

[32] Mem. Op. at 7 (Docket No. 90).

[33] Second Am. Compl. ¶¶ 21-24, 62-65.

warnings regarding such policies since 1988.[34]  PacLife clearly should have disclosed these issues to Dr. Patel.  At a minimum, PacLife should have disclosed to Dr. Patel that senior IRS officials had expressly criticized these particular 412(i) plans in late 2002 and early 2003.[35]  The IRS officials declared the arrangements to be "illegal Section 412(i) schemes," which had "a criminal side . . . beyond any eventual tax penalties or fines" and would be a "very high priority" for the IRS.[36]  Yet PacLife wholly failed to disclose these facts to Dr. Patel, who purchased his insurance policy <u>after</u> the explicit IRS warnings.[37]  PacLife, in fact, affirmatively "stated, without reservation or qualification, that PacLife's insurance policy and the Pendulum Plan were rock-solid, 'risk-free,' [and] were completely sanctioned by the IRS."[38]  PacLife's failure to disclose these material existing facts gives rise to actionable claims for fraud and negligent misrepresentation.

### 2.    PacLife's Representations Were Not Non-Actionable Opinions.

The Court ruled that PacLife's representations were merely opinions or predictions.[39] But even as opinions or predictions, PacLife's representations are still actionable.  As recognized by the *Restatement (Second) of Torts* and various jurisdictions, including the Fifth Circuit and the Texas Supreme Court,[40] an opinion constitutes fraud if the speaker is aware of, but does not

---

[34] *Id.* ¶¶ 21-24; *see also* Mem. Op. at 6-7 (Docket No. 90) (describing Announcement 88-51 as a "warning" regarding policy valuation issues).

[35] Second Am. Compl. ¶¶ 48-54.

[36] *Id.* ¶ 54.

[37] *Id.* ¶¶ 61, 67.

[38] *Id.* ¶¶ 61-62, 65-66.

[39] Mem. Op. at 8-9 (Docket No. 90).

[40] *See, e.g., Rubinstein v. Collins*, 20 F.3d 160, 172 (5th Cir. 1994) (reversing the district court's dismissal of fraud claims for "reading too rigidly the general proscription against fraud actions based on opinion" under Texas law). The Fifth Circuit noted that Texas law recognizes several important exceptions to this general rule.  *Id.* (citing *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983)).

disclose, facts undermining its accuracy.[41]   This is especially true with respect to tax shelters. For example, in *Seippel v. Jenkens & Gilchrist, P.C.*, the court held that the defendant's statement that a tax shelter was "100 percent legitimate," while failing to disclose authority to the contrary, was sufficient to support a fraud claim.[42]   Likewise, in *Green v. Beer*, the court rejected the defendants' argument that their statements regarding the viability of certain tax shelters were non-actionable predictions of future events.[43]   Instead, the court noted that "[a]n expression or prediction as to some future event, known by the author to be false or made despite the anticipation that the event will not occur, is deemed a statement of a material existing fact."[44]

Here, PacLife was aware of the illegality and risks when marketing this particular tax shelter to Dr. Patel.  As noted above, PacLife knew about many problems that had nothing to do with the limited issues address in the February 2004 revenue rulings and proposed regulations.[45] In addition, PacLife not only received warnings from its own advisors, but knew about explicit warnings from senior IRS officials that these 412(i) arrangements violated the letter and spirit of the law.[46]   Despite these warnings, PacLife made unqualified statements similar to the "100

---

[41] *See, e.g., Rubinstein*, 20 F.3d at 172; *see also Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 352 (E.D.N.Y. 2008) ("[A]n opinion may constitute fraud where it has no basis in fact or the speaker was aware of facts undermining the accuracy of the statement."); RESTATEMENT (SECOND) OF TORTS § 539 cmt. b (1977) ("The statement of opinion may not only imply that the maker knows of no fact incompatible with the opinion, but, when the circumstances justify it, may also reasonably be understood to imply that he does know facts sufficient to justify him in forming the opinion and that the facts known to him do justify him."). *Cf. In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989) (stating that an opinion may be actionable if one of its three implicit factual assertions — "(1) that the statement is genuinely believed, (2) that there is a reasonable basis for that belief, [and] (3) that the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement" — is inaccurate).

[42] 341 F. Supp. 2d 363, 379 (S.D.N.Y. 2004).

[43] No. 06 Civ. 4156, 2009 WL 911015, at *7-8 (S.D.N.Y. Mar. 31, 2009).

[44] *Id.* at *7 (internal quotations omitted).

[45] *See supra* Section III(A)(1).

[46] Second Am. Compl. ¶¶ 20, 25-30, 47-50, 54-55, 62-66, 68, 72-75, 86, 103-104.

percent legitimate" representation in *Seippel*.[47]   These statements concealed the existing risks and facts undermining the accuracy of such statements.[48]   They are actionable.[49]

### 3.     <u>Dr. Patel Reasonably Relied Upon PacLife's Representations.</u>

The Court held that any reliance on statements regarding how the IRS would treat these 412(i) plans is unreasonable as a matter of law.[50]   As explained above, however, Dr. Patel relied upon representations and omissions as to whether the Patel DBP complied with then-existing law, not as to future actions by the IRS.[51]   The Patel DBP was either legal or illegal, regardless of whether the IRS would later decide to enforce the law.   And it was certainly reasonable for Dr. Patel to rely upon PacLife — an international insurance company acting through Dr. Patel's long-time financial advisor — regarding the propriety of using life insurance to fund a purported retirement plan.[52]   In any event, Dr. Patel respectfully suggests that a blanket legal rule barring any reliance in this context would be inappropriate.

Other courts considering reliance in the context of tax shelters do not follow such a rule. For example, in *Eisenberg v. Gagnon*, the Third Circuit reversed a ruling that the plaintiffs could

---

[47] *Id.* ¶ 61.

[48] In construing the Second Amended Complaint, the Court must accept as true allegations that PacLife knew that the IRS had already deemed plans like the Pendulum Plan funded with their policies to be an illegal tax shelter.  *See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Green*, 2009 WL 911015, at *8 ("If Defendants knew all this, then their statements, although referred to as future events, were factual misrepresentations.").  If the Court were to consider whether PacLife knew that its statements and omissions were false when made, those are questions of fact and cannot be resolved on a motion to dismiss.  *See Seippel*, 341 F. Supp. 2d at 379 n.110.

[49] Moreover, this is a fact-intensive question that should not be resolved on a motion to dismiss.  *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995) ("Whether a statement is an actionable statement of 'fact' or merely one of 'opinion' often depends on the circumstances . . . [including] the statement's specificity, the speaker's knowledge, the comparative levels of the speaker's and the hearer's knowledge, and whether the statement relates to the present or the future."); *see also Bouaziz v. AZT Corp.*, No. 3:10-CV-053, 2010 WL 2730594, at *4 (N.D. Tex. July 9, 2010) (Boyle, J.) (citing *Transport* and denying motion to dismiss as to non-actionable opinions).

[50] Mem. Op. at 8-9 (Docket No. 90).

[51] *See supra* Section III(A)(1).

[52] Second Am. Compl. ¶¶ 56-67.

9

not have justifiably relied on representations about how the IRS would treat an investment.[53]
Likewise, in *Green*, the court refused to dismiss fraud claims despite their requiring justifiable
reliance on representations concerning future IRS conduct.[54]   And in *Seippel*, the court held that
the plaintiffs could rely on representations that they would avoid future IRS penalties.[55]   In
*Eisenberg*, *Green*, and *Seippel*, the plaintiffs alleged — like Dr. Patel here — that the tax shelter
was illegal when sold, that the defendants knew it, and that they concealed or misrepresented
known risks related to the tax shelter.

These allegations completely distinguish the cases cited in the Memorandum Opinion.
The plaintiff in *Borba v. Thomas* made no such allegations.[56]   Nor did the plaintiffs in *Williams
v. Sidley, Austin, Brown & Wood, LLP*.[57]   In fact, the *Williams* plaintiffs alleged that the
defendants actually disclosed and discussed the various risks related to the transaction.[58]   Dr.
Patel, in contrast, alleges that PacLife concealed the fact that the Patel DBP violated existing law
and/or presented substantial risks.[59]   These allegations, moreover, are not contradicted by the

---

[53] 766 F.2d 770, 773, 778-79 (3d Cir. 1985).

[54] *Green*, 2009 WL 911015, at *7-8.

[55] *See Seippel*, 341 F. Supp. 2d at 369, 379-80.  *Seippel* further noted that reliance is a fact-intensive question and, therefore, not appropriate to decide on a motion to dismiss.  *Id.* at 380.  For example, courts determining whether a plaintiff's reliance was justifiable consider the plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances, including whether the plaintiff was aware of facts indicating that the defendant's representation was false.  *See Pac. Mut. Life Ins. Co. v. Ernst & Young & Co.*, 10 S.W.3d 798, 807 (Tex. App.—Dallas 2000), *rev'd on other grounds*, 51 S.W.3d 573 (Tex. 2001).

[56] 138 Cal. Rptr. 565, 570, 572 (Cal. Ct. App. 1977).  *Borba* is also distinguishable because the defendant promised future government approval, which was necessary pre-condition for the entire transaction.  However, the transactions at issue here were not dependent on prior IRS review and approval.

[57] 816 N.Y.S.2d 702, 2006 WL 684599, at *5 (N.Y. Sup. Ct. 2006).  Similarly, the court in *Duperier*, found that the defendant conducted due diligence and was aware of virtually no risks undermining the accuracy of his statements.  *Duperier v. Texas State Bank*, 28 S.W.3d 740, 749 (Tex. App.—Corpus Christi 2000, rev. dismissed).

[58] *Id.* at *1 (describing allegations about how defendants explained similar tax strategies previously challenged by the IRS); *see also id.* at *5 ("[I]t may be inferred from the allegations contained within the four corners of the amended complaint that plaintiffs understood the risks . . . .").

[59] Second Am. Compl. ¶¶ 20-32, 61-66.

"more likely than not" opinion letter from Bryan Cave LLP.[60]  Indeed, *Seippel* rejected a very similar argument, stating:  "It is not obvious that the cautious, ambiguous phrasing of the opinion letter (which precedes virtually all of its conclusions with 'it is more likely than not that . . .') contradicts [the promoter's] representations as to the legitimacy of the shelter."[61]  Tax opinions often employ this "more likely than not" language, which not only derives directly from the Internal Revenue Code, but is one of the highest confidence levels for a tax opinion.[62]  It would be counter-intuitive (and trigger negative implications far beyond this case) to hold that such an opinion, the very purpose of which is to justify the taxpayer's reliance on the underlying representations related to the transaction, automatically destroys any reliance as a matter of law.

In sum, Dr. Patel adequately alleged the reliance element of his claims in the Second Amended Complaint.  To hold that reliance is inherently unreasonable here as a matter of law would contravene public policy and encourage further promotion of illegal tax shelters.  Innocent investors could almost never pursue a claim, and unscrupulous promoters would enjoy virtual immunity from liability.  The Court should reconsider the Memorandum Opinion to prevent manifest injustice and to correct the above-described errors of law and/or fact.

**B.      ALTERNATIVELY, THE COURT SHOULD GRANT LEAVE TO FILE THE AMENDED COMPLAINT.**

The Court should grant Dr. Patel leave to file the Amended Complaint in the alternative to address the deficiencies identified in the Memorandum Opinion.  The Rule 15(a) factors, as

---

[60] The Memorandum Opinion suggests that the risks related to these 412(i) plans were disclosed in the Bryan Cave LLP opinion letter.  Mem. Op. at 9 n.5 (Docket No. 90) ("[T]he 'more likely than not' Bryan Cave legal opinion arguably provided Plaintiffs with ample notice that there existed a risk that the Patel DBP, as funded with the Pacific Life insurance policy, might not satisfy the requirements of 412(i).").

[61] *Seippel*, 341 F. Supp. 2d at 379-80.

[62] *See* Eric M. Pauly, *Raising Penalty Standard "More Likely Than Not" Creates Conflict Between Tax Lawyers and Their Clients*, 47 WASHBURN L.J. 757, 760-61 (2008) (citing 26 U.S.C. § 6694(a)(2)(B)).

explained below, do not warrant denial of the proposed amendment.  Thus, leave to amend must, as Rule 15(a) requires, be freely given.

### 1.      The Amended Complaint Does Not Result from Undue Delay.

Dr. Patel has not delayed in filing the Amended Complaint.  He moved expeditiously for leave to amend within the 28-day period imposed by Rule 59(e).  The simple fact that this action has been litigated through the motion-to-dismiss stage does not constitute delay.  Otherwise, leave to amend would <u>never</u> be granted after a dismissal.  Yet in the seminal leave-to-amend case, the United States Supreme Court concluded that a post-dismissal amendment was entirely appropriate.[63]  In any event, delay alone does not justify denial of a motion to amend.[64]  There must be <u>undue</u> delay, meaning that the proposed amendment prejudices the non-moving party or imposes unwarranted burdens on the Court.[65]  Here, the Amended Complaint does not cause any undue prejudice to PacLife for the reasons set forth below.  Nor does the Amended Complaint impose upon the Court by requiring it "to try the case on various theories seriatim."[66]  The Amended Complaint raises no new claims or parties, but merely adds additional factual allegations to satisfy Rule 9(b).  Accordingly, there has been no undue delay.

### 2.      The Amended Complaint Does Not Involve Bad Faith or Dilatory Motive.

Dr. Patel has not acted in bad faith or with dilatory motive in filing the Amended Complaint now.  This is <u>not</u> a case where the plaintiff knew his complaint was deficient and made a "strategic decision" to risk dismissal, with the expectation that he would be granted leave

---

[63] *See Foman v. Davis*, 371 U.S. 178, 182-83 (1962).

[64] *See Maveaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 & n.2 (5th Cir. 1981)).

[65] *See id.*

[66] *Dussouy*, 660 F.2d at 598 n.2.

to amend his complaint later.[67]   Absent such evidence, a post-dismissal amendment may be allowed, as recently recognized by Judge Barbara Lynn.[68]   In any event, Dr. Patel could not further amend his complaint after filing his five-page synopsis and Second Amended Complaint. In its memorandum opinion dated May 22, 2009, the Court expressly stated that "[n]o further briefing will be permitted," while it considered the proposed amendment.[69]   Dr. Patel has not been dilatory and has not acted in bad faith here.   He simply seeks to have his claims decided on the merits.

### 3.   The Amended Complaint Does Not Cause Undue Prejudice.

PacLife suffers no undue prejudice from the proposed amendment.   The Amended Complaint adds no new claims or parties.   And it does not affect or delay discovery, which has not yet commenced in this case.

### 4.   The Amended Complaint Is Not Futile.

The proposed amendment is not futile.   The Amended Complaint spells out in even greater detail why PacLife's representations were false when made.   The Amended Complaint, for example, devotes nearly <u>fourteen pages</u> to explaining how the Pendulum Plan violated existing law and/or presented substantial risks under existing law, including not complying with the incidental benefit rule, the exclusive benefit rule, the plan permanency requirement, the step transaction doctrine, and other requirements to be a qualified section 412(i) plan.[70]   These requirements were not addressed or altered by the IRS in its revenue rulings and proposed regulations in February 2004.   The Amended Complaint, moreover, quotes articles and other

---

[67] *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864-65 (5th Cir. 2003) (refusing to grant leave for a post-dismissal amendment because "Plaintiffs admit they deliberately chose to delay amending their complaint").

[68] *Verizon Employee Benefits Comm. v. Adams*, No. 3:05-CV-1793-M, 2006 WL 889997, at *2 (N.D. Tex. Apr. 5, 2006) (Lynn, J.) (distinguishing *Rosenzweig* and granting a post-dismissal amendment of the complaint).

[69] Mem. Op. at 53 (Docket No. 73).

[70] Ex. A ¶¶ 25-56.

documents in which industry experts discussed these problems with the Pendulum Plan between 1999 and 2003 — long before the IRS issued its revenue rulings and proposed regulations.[71]

The Amended Complaint, moreover, includes new allegations showing that PacLife's representations, even if deemed to be mere opinions, are still actionable.[72]  For example, the Amended Complaint alleges that "Defendants were aware of, but did not disclose to Plaintiffs, material facts undermining the accuracy of (if not completely disproving) their representations," including the significant fact that "senior IRS and Treasury officials had expressly criticized purported 412(i) arrangements like the Patel DBP in October 2002 and January 2003, well before Plaintiffs purchased the Patel Policy to fund the Patel DBP."[73]  These allegations fall within well-recognized exceptions to the general rule that opinions and predictions are not actionable.[74]

Finally, the Amended Complaint includes additional allegations showing that Plaintiffs reasonably relied upon the representations by Defendants.  The Amended Complaint, for example, alleges as follows:

- "Defendants held themselves out to be specially qualified regarding issues related to retirement plans, life insurance, and federal tax law."[75]

- "Defendants, moreover, had special knowledge as to the IRS position regarding the Pendulum Plan, particularly after listening to the harsh criticisms by senior Treasury and IRS officials at industry conferences in October 2002 and January 2003."[76]

---

[71] *Id.* ¶¶ 25-39 (and accompanying exhibits).

[72] *Id.* ¶¶ 71-77, 87-91, 97-98, 132-34.

[73] *Id.* ¶ 134.

[74] *See Rubinstein v. Collins*, 20 F.3d 160, 172 (5th Cir. 1994); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983); *Bryant v. Transcontinental Gas Pipe Line Corp.*, 821 S.W.2d 187, 190 (Tex. App.—Houston 1991, writ denied).

[75] Ex. A ¶ 128.

[76] *Id.*

- "PacLife openly discussed the IRS criticisms with the Consultant Defendants" and "was concerned" about these criticisms.[77]   Indeed, "[g]iven the IRS criticisms," Defendants "decided to stop marketing these 412(i) arrangements altogether in early to mid 2003 — only weeks after selling the Patel DBP and the Patel Policy."[78]

- "Plaintiffs, in contrast to Defendants, had no knowledge whatsoever regarding these issues.  Thus, it was certainly reasonable for Plaintiffs to rely upon PacLife (an international insurance company acting through Dr. Patel's long-time financial advisor) and the Consultant Defendants (a national pension consulting firm) as to the propriety of using life insurance to fund a purported retirement plan under section 412(i) of the Code."[79]

These allegations further distinguish the cases cited in the Memorandum Opinion.[80]  Defendants not only held themselves out as experts in this arena, but capitalized on Dr. Patel's relationship with his financial advisor to close the underlying sale without disclosing their special knowledge as to substantial problems and risks.  Dr. Patel reasonably relied on Defendants under these facts, and Defendants should be held accountable for their misconduct.

## IV.  <u>PRAYER</u>

WHEREFORE, Dr. Patel respectfully requests that the Court: (1) reconsider its Memorandum Opinion and deny PacLife's motion to dismiss; (2) grant leave to file the Amended Complaint attached hereto as Exhibit "A"; and (3) grant such other and further relief that the Court deems just and appropriate.

---

[77] *Id.* ¶¶ 73-75.

[78] *Id.* ¶ 96.

[79] *Id.* ¶¶ 137.

[80] *See supra* Section III(A)(3) (analyzing the *Borba* and *Williams* cases).

15

DATED:  September 24, 2010.

Respectfully submitted,

**DIAMOND MCCARTHY LLP**

 /s/ Eric D. Madden
Eric D. Madden
State Bar No. 24013079
Brandon V. Lewis
State Bar No. 24060165
1201 Elm Street, Suite 3400
Dallas, Texas  75270
(214) 389-5300 (telephone)
(214) 389-5399 (facsimile)
emadden@diamondmccarthy.com
blewis@diamondmccarthy.com

-and-

**MCKOOL SMITH, PC**
Gary Cruciani
State Bar No. 05177300
Michael P. Fritz
State Bar No. 24036599
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000 (telephone)
(214) 978-4044 (facsimile)
gcruciani@mckoolsmith.com
mfritz@mckoolsmith.com

**COUNSEL FOR PLAINTIFFS**

**<u>CERTIFICATE OF CONFERENCE</u>**

The undersigned hereby certifies that he conferred with Kurt Hemr, counsel for Defendant Pacific Life Insurance Company, regarding the relief requested in this motion on September 24, 2010.  Mr. Hemr stated that his client opposes the motion.

 /s/ Eric D. Madden
Eric D. Madden

16

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that all parties will receive a copy of the foregoing motion filed electronically with the United States District Court for the Northern District of Texas, Dallas Division, on this 24th day of September, 2010, with notice of case activity generated and ECF notice to be sent electronically by the Clerk of the Court. A copy will be sent via electronic mail to those who do not receive ECF notice from the Clerk of the Court.

                        */s/ Eric D. Madden*
                        Eric D. Madden